William **KHANO**, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,** Respondent.

No. 92–3316.

United States Court of Appeals, Seventh Circuit.

Argued April 28, 1993.

Decided Aug. 4, 1993.

Mark J. Thomas (argued), Chicago, IL, for petitioner.

Fred Foreman, U.S. Atty., Crim. Div., Chicago, IL, William J. Howard, Mark C. Walters, David J. Kline, Lisa Dornell, Dept. of Justice, Office of Immigration Litigation, Washington, DC, A.D. Moyer, Samuel Der-Yeghiayan, I.N.S., Chicago, IL, Marshall T. Golding (argued), Civ. Div., Washington, DC, for respondent.

Before BAUER, Chief Judge, COFFEY, Circuit Judge, and EISELE, Senior District Judge.[1]

BAUER, Chief Judge.

This case involves two promises—one broken, one kept. William Khano, a native and citizen of Syria, promised the United States government that, if allowed into this country, he would enroll in a university as a full-time student and would remain a full-time student. The government—acting through the Immigration and Naturalization Service ("INS")—admitted Khano into the United States, but promised to deport him if he broke his promise. Khano broke his promise. The INS kept its promise. It instituted deportation proceedings against Khano.

After a hearing on the matter, an immigration judge found Khano deportable pursuant to section 241(a)(9) of the Immigration and Nationality Act ("the Act"), 8 U.S.C. § 1251(a)(9). The immigration judge also denied Khano's application for asylum and withholding of deportation under sections 208(a) and 243(h) of the Act, respectively, 8 U.S.C. §§ 1158(a) and 1253(h). The Board of Immigration Appeals ("BIA") affirmed the immigration judge's decision and dismissed Khano's appeal. Khano petitions for review of the BIA's final order of deportation. We affirm.

I.

William Khano entered the United States as a student in Chicago, Illinois on February 1, 1982. Administrative Record ("A.R.") at 142. Originally, the INS authorized Khano to remain in the United States until December 30, 1986. On June 12, 1984, the INS extended Khano's authorized stay for as long as he maintained his student status. The INS charged that in April 1986, Khano became deportable because he stopped attending classes until September 1986. The INS also accused Khano of further violating his status because, after his re-enrollment in September 1986, he did not attend school on a full-time basis. *Id.*

On September 30, 1987, the immigration judge conducted Khano's deportation hearing and considered Khano's request for asylum, withholding of deportation, and voluntary departure. Khano testified that he graduated from Wilbur Wright College after two years, then transferred to the University of Illinois at Chicago ("UIC"). *Id.* at 34, 51. At UIC, he initially enrolled full-time, but because of his marriage and "other responsibilities," he stopped attending full-time. *Id.* at 34–5, 47, 49–50, 53. Between January and September 1986, he carried only nine credit hours per semester. *Id.* Khano admitted that a full-time course of study at UIC was twelve credit hours. *Id.* at 49. At the time of the hearing, he was not attending classes at all. *Id.* at 38. UIC decided not to allow Khano to continue, apparently because Khano received poor grades, which he described as a "F" in chemistry and a "D" in math. *Id.* at 35, 62. The immigration judge found that the government established its case for deportability by clear, convincing, and unequivocal evidence because Khano testified that he did not carry a full course of studies. *Id.* at 14.

In addition to evidence which related to his student status, Khano presented evidence to support his three applications for discretionary relief: (1) asylum, (2) withholding of deportation to Syria, and (3) the privilege of voluntary departure from the United States in lieu of deportation. *Id.* at 67.

To support his asylum application, Khano testified that he is an Assyrian Christian. The majority of Syrian citizens are Arab Muslims. *Id.* at 68. Khano alleges that as a religious and ethnic minority group, Assyrian Christians are subject to discrimination. He also stated that he had been a member of the Assyrian Democratic Party for about seven years. *Id.* Khano asserted that the Assyrian Democratic Party was not legally authorized though, by his description, it was merely a social group dedicated to the preservation of Assyrian culture and customs. *Id.* at 69. He admitted, however, that the Syrian government has not officially outlawed the Assyrian Democratic Party and that the gov-

1. The Honorable Garnett Thomas Eisele, Senior Judge of the United States District Court for the Eastern District of Arkansas, is sitting by designation.

ernment allows it to publish a magazine and write about minorities. *Id.* at 108.

Khano also stated that he was once arrested. *Id.* at 69. He said that in 1981, the wife of the head of the Syrian secret police accused him of throwing a stone at her. *Id.* at 70, 98. Khano claimed that the head of the secret police and two other men slapped him and took him to their headquarters. *Id.* at 71. He stated that they held him for three hours, then released him. After the arrest, Khano left Syria and travelled to Lebanon to escape what he described as Syrian persecution. *Id.* at 71–72. He stayed in Lebanon for a year then returned to Syria, obtained a passport, and came to the United States. *Id.* at 98, 100.

Khano claimed that after he arrived in the United States, a visiting relative told him that the Syrian secret police had detained thirty-two unnamed Assyrians, including two of Khano's relatives. The secret police allegedly beat and tortured these thirty-two Assyrians for fifteen days. *Id.* at 74. This visiting relative, according to Khano, said that the Syrian secret police had a list of 300 Assyrians that were to be detained, including, possibly, Khano himself. *Id.* at 75. The relative allegedly added that the secret police visited Khano's Syrian home many times and asked for Khano. *Id.*

Khano also testified that his family has been harassed by the Syrian government. Specifically, he claimed that one of his brothers—a member of the Syrian military—was shot in the back in 1979 for refusing to execute members of the Muslim Brotherhood. *Id.* at 84–85. Khano said that another brother was shot for political activities against the government. *Id.* A third brother allegedly left Syria for Lebanon because he feared that his political activities with the Assyrian Democratic Party would cause him trouble. *Id.* at 86. Finally, Khano added that he believes there is no freedom of religion in Syria and that Christians like himself are vulnerable to discrimination in school and to harassment in public. *Id.* at 114. For these reasons, Khano said that he fears that the secret police will arrest him if he returns to Syria and that all members of the Assyrian Democratic Party are in danger. *Id.* at 75–76.

Pursuant to 8 C.F.R. §§ 208.11 and 236.-3(b), the United States State Department rendered an opinion that suggested that Khano's fears were exaggerated. The State Department's opinion stated that Syrian Christians—like Khano—are permitted to practice their faith and are not subject to official persecution or discrimination. *Id.* at 124. The opinion noted that conditions for religious minorities had improved substantially over the past few years and that the Syrian government had intervened several times in the prior year to prevent Muslim harassment of Christians. *Id.* The State Department opinion concluded that the situation in Syria did not justify Khano's claim that he possessed a well-founded fear of persecution under the Act. *Id.*

Despite his testimony, Khano stated in his asylum application that he had never "been detained, interrogated, convicted and sentenced, [or] imprisoned in any country." *Id.* at 129. The immigration judge concluded that Khano's statement in his asylum application conflicted with his testimony at the hearing and resolved the inconsistency against Khano. *Id.* at 16. The immigration judge also noted that Khano's testimony indicated that he had no difficulty travelling between Syria and Lebanon and had easily obtained a Syrian passport. *Id.* at 17. Overall, the immigration judge discredited much of Khano's testimony, decided that Khano had not established that he possessed the well-founded fear of persecution required by section 208(a), and denied his application for asylum.

The immigration judge also denied Khano's application for withholding of deportation under section 243(h). *Id.* at 18. The immigration judge noted that Khano's brothers, his father and other relatives who reside in Syria are not persecuted by the Syrian government and decided that Khano had failed to show that he would be persecuted because of his religion or nationality. *Id.* at 18–19. The immigration judge did grant Khano's application for voluntary departure which allows Khano to go to any country that will accept him, so long as he leaves the United States. *Id.* at 19.

Khano appealed to the BIA. The BIA pointed out that Khano offered only generalized arguments in support of his appeal, that he did not specify any facts at issue, and that he provided no legal analysis to bolster his appeal. The BIA dismissed Khano's appeal because it lacked an arguable basis in law or fact and was filed solely to cause delay. *Id.* at 3. Khano now petitions for review of the BIA's order.

## II.

### A. Standard of Review

 Khano faces a formidable task in his attempt to overturn the BIA's decision. He must convince us that the BIA abused its discretion when it dismissed his appeal of the immigration judge's decision. *Osuch v. INS,* 970 F.2d 394, 396 (7th Cir.1992). We review only the final order of the BIA, not the immigration judge's decision. *Vergara–Molina v. INS,* 956 F.2d 682, 684 (7th Cir.1992).

### B. Section 241(a)(9): Deportation for Failure to Maintain Nonimmigrant Status

 Section 241(a)(9) of the Act gives the INS, which acts on behalf of the Attorney General, the authority to order the deportation of those nonimmigrants who fail to maintain the conditions attached to their nonimmigrant status while in the United States.[2] 8 U.S.C. § 1251(a)(9); *Elkins v. Moreno,* 435 U.S. 647, 665, 98 S.Ct. 1338, 1349, 55 L.Ed.2d 614 (1978). Once the INS determined that Khano failed to maintain his status as a full-time student—the condition attached to his nonimmigrant status—it instituted deportation proceedings before the immigration judge. In that proceeding, the INS was required to prove by clear, unequivocal, and convincing evidence that Khano had violated his nonimmigrant status, that is, that Khano had ceased being a full-time student.

Khano contends that the INS did not present clear and convincing evidence of his de-

portability because the only evidence presented was Khano's own testimony. This argument is rather puzzling because Khano himself admitted that he had stopped attending school full-time—because of marital and other responsibilities—and that due to his poor grades he eventually stopped attending school at all. A.R. at 34–5, 38, 47, 49–50, 53, 62. Why should the INS be required to present any more evidence than this? The answer, quite simply, is that INS did not have to come forward with any additional evidence because Khano, by his own admission, proved the INS' case. The INS conditioned Khano's admission into the United States on his promise to study full-time at a university. Khano ceased to be a full-time student. *See* 8 C.F.R. § 214.2(f)(6)(i)(B) (full course of study means at least twelve semester or quarter hours of instruction per academic term). The INS promised to deport Khano if he refused to honor his promise. It held up its end of the bargain and instituted deportation proceedings against Khano. The INS presented clear, unequivocal, and convincing evidence from Khano's own lips that he was deportable pursuant to section 241(a)(9). The BIA correctly dismissed Khano's appeal on this issue.

### C. Khano's Application for Discretionary Relief

The Act provides two procedural paths by which deportable aliens may remain here to avoid persecution in another country. *Carvajal–Munoz v. INS,* 743 F.2d 562, 564 (7th Cir.1984). Khano elected to travel both paths; he applied for (1) asylum pursuant to section 208(a) and (2) withholding of deportation pursuant to section 243(h). We discuss each in turn.

#### 1. Section 208(a): Asylum

 Section 208(a) authorizes the Attorney General, in her discretion, to grant asy-

---

**2.** Khano was admitted into the United States as a nonimmigrant student, which the Act defines as:

an alien having a residence in a foreign country which he has no intention of abandoning, who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for

the purpose of pursuing such a course of study at an established college, university ... or other academic institution ... in the United States, particularly designated by him and approved by the Attorney General after consultation with the Secretary of Education....

8 U.S.C. § 1101(a)(15)(F)(i).

lum to an alien who is a "refugee" as defined in the Act.[3] *INS v. Elias–Zacarias*, —— U.S. ——, ——, 112 S.Ct. 812, 815, 117 L.Ed.2d 38 (1992). The Act defines a "refugee" as an alien who is unable or unwilling to return to his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The Act thus sets up a two-step process by which an alien may obtain asylum. First, the asylum applicant must show that he or she is a "refugee" under the Act. The applicant bears the burden of proof on this issue and must present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution if forced to return to his or her country of origin. *Zulbeari v. INS*, 963 F.2d 999, 1000 (7th Cir.1992); 8 C.F.R. § 208.13. In order to prove that he or she possesses the requisite well-founded fear of persecution, the asylum applicant must show not only a genuine, subjective fear of persecution, but also that a reasonable person in the applicant's circumstances would fear persecution if returned. *Sivaainkaran v. INS*, 972 F.2d 161, 163 (7th Cir.1992). Second, if the applicant establishes that he or she qualifies as a refugee under the Act, then the Attorney General exercises her discretion by denying or granting asylum. *INS v. Cardoza–Fonseca*, 480 U.S. 421, 450, 107 S.Ct. 1207, 1222, 94 L.Ed.2d 434 (1987); *Sivaainkaran*, 972 F.2d at 163.

■ In this case, Khano did not satisfy the first step in the asylum application process because he failed to persuade either the immigration judge or the BIA that he possessed a well-founded fear of persecution. The evidence before the immigration judge, and reviewed by the BIA, was conflicting. Khano testified that he would be persecuted if he returned because he was a Christian, that his family had been harassed by government officials, and that a relative told him that he might be on a list of Assyrians that were to be arrested. He also claimed that his activities as a member of the Assyrian Democratic Party caused him to fear persecution. He added that he once had been wrongfully arrested after he was falsely accused of throwing a rock.

At times, however, Khano's testimony contradicted itself. For example, he claimed that the Assyrian Democratic Party was not a legal organization, but later admitted that it was not outlawed and even was allowed to publish a magazine and write about minorities. In his application for asylum, Khano denied ever having been detained, interrogated, convicted, sentenced, or imprisoned in any country including, of course, Syria, but, at the hearing before the immigration judge, he testified that he had been arrested after he was falsely accused of throwing a rock. The State Department's advisory opinion further suggested that Khano exaggerated the threat of persecution he would face if returned to Syria. The immigration judge and the BIA resolved these inconsistencies against Khano, decided that Khano did not possess a well-founded fear of persecution, and concluded that he was not a refugee as defined by the Act. Accordingly, the immigration judge and the BIA denied Khano's application for asylum. Given the conflicting evidence before the immigration judge, it was well within the BIA's discretion to dismiss Khano's appeal and deny his application for asylum.

2. Section 243(h): Withholding of Deportation

■ Section 243(h) requires that the Attorney General withhold deportation of an alien if the Attorney General determines that, if deported, the alien's life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion.[4] Like sec-

---

3. In full, section 208(a) states:

 The Attorney General shall establish a procedure for an alien physically present in the United States or at a land border or port of entry, irrespective of such alien's status, to apply for asylum, and the alien may be granted asylum in the discretion of the Attorney Gener-

al if the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title.
 8 U.S.C. § 1158(a).

4. Section 243(h) reads as follows:
 (1) The Attorney General shall not deport or return any alien (other than an alien described

tion 208(a), an alien who applies for relief under section 243(h) bears the burden of persuasion. The standard of proof, however, is different. Section 243(h) requires that an applicant establish that it is more likely than not that the alien would suffer persecution if deported. *Cardoza–Fonseca,* 480 U.S. at 423, 107 S.Ct. at 1208–09. The standard has also been described as requiring that the applicant prove that he or she faces a clear probability of persecution if deported. *INS v. Stevic,* 467 U.S. 407, 430, 104 S.Ct. 2489, 2501, 81 L.Ed.2d 321 (1984). However the standard is worded, though, one thing is clear: an applicant for relief pursuant to section 243(h) bears a heavier burden than an applicant that applies for section 208(a) asylum. *Carvajal–Munoz,* 743 F.2d at 576. Accordingly, because Khano has not established that he possesses the well-founded fear required by section 208(a), his application for section 243(h) relief also fails. *See Carvajal–Munoz,* 743 F.2d at 579 (where petitioner's evidence fell short of that required to establish well-founded fear of persecution for section 208 relief, evidence also fell short of establishing likelihood of persecution as to entitle petitioner to section 243(h) relief). The BIA did not abuse its discretion when it denied Khano's section 243(h) claim.

### III.

For William Khano and millions of others around the world, the United States is, without question, the Promised Land. This Promised Land, however, holds no promise for William Khano. His broken promise destroyed that possibility. Accordingly, Kha-

no's petition is denied and the decision of the BIA is

AFFIRMED.

in section 1251(a)(4)(D) of this title) to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.

(2) Paragraph (1) shall not apply to any alien if the Attorney General determines that—

(A) the alien ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion;

(B) the alien, having been convicted by a final judgment of a particularly serious crime, con-

stitutes a danger to the community of the United States;

(C) there are serious reasons for considering that the alien has committed a serious nonpolitical crime outside the United States prior to the arrival of the alien in the United States; or

(D) there are reasonable grounds for regarding the alien as a danger to the security of the United States.

For purposes of subparagraph (B), an alien who has been convicted of an aggravated felony shall be considered to have committed a particularly serious crime.

8 U.S.C. § 1253(h).