Teofilo Jusay CUEVAS and Felisa Marasigan Cuevas, Petitioners,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 94–2189.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 30, 1994.

Decided Jan. 4, 1995.

Rehearing Denied Jan. 27, 1995.

---

Y. Judd Azulay (argued), Stephen D. Berman, Azulay & Azulay, Chicago, IL, for petitioners Teofilo Jusay Cuevas, Felisa Marasigan Cuevas.

Carl H. McIntyre, Jr., Dept. of Justice, Office of Immigration Litigation, Janet Reno, U.S. Atty. Gen., Office of U.S. Atty. Gen., Washington, DC, Samuel Der–Yeghiayan, I.N.S., James B. Burns, Office of U.S. Atty., Chicago, IL, William J. Howard, Thomas Hussey (argued), David J. Kline, Dept. of Justice, Office of Immigration Litigation, Washington, DC, for respondent I.N.S.

Before BRIGHT,* BAUER and COFFEY, Circuit Judges.

BAUER, Circuit Judge.

Teofilo Jusay Cuevas and his wife, Felisa Marasigan Cuevas, petition for review of a decision of the Board of Immigration Appeals ("BIA") which denied their application for asylum and withholding of deportation under sections 208(a) and 243(h) of the Immigration and Nationality Act (the "Act"), 8 U.S.C. §§ 1158(a) and 1253(h). We deny the petition.

## I.

Petitioners are natives and citizens of the Philippines. Petitioners entered the United States on April 6, 1992, as non-immigrant visitors authorized to remain until October 5, 1992. When petitioners remained in the United States past that date, the Immigration and Naturalization Service ("INS") instituted deportation proceedings. Petitioners conceded their deportability, but applied for asylum and withholding of deportation under the Act.

An immigration judge ("IJ") held a hearing on petitioners' application. Petitioners testified that they lived and worked in Makati, a suburb of Manila, prior to entering the United States. Petitioners owned a tract of

land of seven hectares (one hectare equals 2.471 acres) in the Philippine village of Janao Janao, which was three hours from Makati by car. This land was used to grow rice and was rented to tenants. The tenants stopped paying rent in 1986 and thus became known as "squatters." The squatters requested to purchase the land from petitioners in July 1991 and three times thereafter, but each time petitioners refused to sell. Petitioners believed that the squatters were acting on behalf of the New People's Army ("NPA"), the armed wing of the Communist Party of the Philippines.

Petitioners testified that they received threatening telephone calls at their home in Makati after they refused to sell their land. In December 1991, petitioners' nephew was killed and petitioners' son was stabbed in Manila. Petitioners also testified that their car was stopped on a highway by three or four armed men who threatened petitioners with physical harm if they did not sell their property. Petitioners reported these incidents to the police in Janao Janao, but no one was apprehended. Petitioners believed that the mayor of Janao Janao was a supporter of the NPA and wished to purchase their land. Petitioners also believed that the Philippine government was unable to control the NPA or the squatters and came to the United States to avoid any further confrontations.

The IJ determined that petitioners were not eligible for asylum or withholding of deportation, but granted petitioners permission to depart the United States voluntarily. Although the IJ found that petitioners were "relatively credible," the IJ concluded that petitioners' fear of harm in the Philippines was not objectively reasonable. Petitioners appealed to the BIA, which affirmed for the reasons stated in the IJ's decision.

## II.

Section 208(a) of the Act authorizes the Attorney General, in her discretion, to grant asylum to an alien who is a "refugee"

* The Honorable Myron H. Bright of the United States Court of Appeals for the Eighth Circuit is sitting by designation.

as defined in the Act. 8 U.S.C. § 1158(a). The Act defines a "refugee" as an alien who is unable or unwilling to return to his or her country of origin because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The asylum applicant bears the burden of proving his or her "refugee" status under the Act and "must present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution if forced to return to his or her country of origin." *Khano v. INS*, 999 F.2d 1203, 1208 (7th Cir.1993). Although the Act does not define "persecution," we have defined it as "punishment or the infliction of harm for political, religious, or other reasons that this country does not recognize as legitimate." *De Souza v. INS*, 999 F.2d 1156, 1158 (7th Cir.1993). An applicant possesses a "well-founded fear of persecution" if the applicant shows that he or she has a genuine and subjective fear of persecution and that "a reasonable person in the applicant's circumstances would fear persecution if returned." *Khano*, 999 F.2d at 1208. If an applicant establishes that he or she qualifies as a "refugee" under the Act, the Attorney General may grant or deny asylum in her discretion. *Id.*

■ We review the decision of the BIA rather than the decision of the IJ. *Id.* at 1207. We will uphold the BIA's determination that petitioners were not eligible for asylum if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4); *accord INS v. Elias–Zacarias*, 502 U.S. 478, ——, 112 S.Ct. 812, 815, 117 L.Ed.2d 38 (1992). We can reverse the BIA's decision only if the evidence presented by petitioners was "such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." *Eli-*

*as–Zacarias*, 502 U.S. at ——, 112 S.Ct. at 815.

■ Petitioners contend that the BIA denied them due process by summarily affirming the decision of the IJ without any analysis.[1] All our decisions require, however, is that the BIA's decision "reflect that 'it has heard and thought and not merely reacted.' " *Castaneda–Suarez v. INS*, 993 F.2d 142, 146 (7th Cir.1993) (citation omitted). The BIA "has no duty to write an exegesis on every contention." *Osuchukwu v. INS*, 744 F.2d 1136, 1142 (5th Cir.1984). The IJ's reasons for denying petitioners' application for asylum and withholding of deportation are clearly stated in his decision. Although we have urged the BIA "to explain its decisions in greater detail so that we may be confident it has given an appeal due consideration," we have held that the BIA adequately explains its decision when it adopts a decision of the IJ. *Castaneda–Suarez*, 993 F.2d at 146; *accord Marquez–Medina v. INS*, 765 F.2d 673, 675 n. 3 (7th Cir.1985); *see also Panrit v. INS*, 19 F.3d 544, 546 (10th Cir.1994). If the BIA adopts the reasoning of the IJ, however, the IJ's analysis is the sole basis for our review; if the IJ's reasoning is inadequate, we will not independently review the record in order to uphold the decision. *Panrit*, 19 F.3d at 546.

Petitioners next contend that the BIA's determination that petitioners had failed to prove their eligibility for asylum is not supported by substantial evidence. We do not agree. The BIA appropriately concluded that petitioners had failed to present specific, detailed facts demonstrating persecution or a well-founded fear of persecution on one of the grounds specified in 8 U.S.C. § 1101(a)(42)(A).

■ Petitioners assert that they have a well-founded fear of persecution on account of their political opposition to the NPA within the meaning of 8 U.S.C. § 1101(a)(42)(A). Petitioners therefore must establish that

---

1. The BIA's order stated in relevant part as follows:

PER CURIAM. The appeal is dismissed. We have reviewed the record of proceedings, the immigration judge's decision, and the respondents' contentions on appeal. As we find that the immigration judge adequately and correctly addressed the issue of whether the respondents had proven their statutory eligibility for a grant of asylum or withholding of deportation, the decision below is affirmed in its entirety. The request for oral argument is denied. 8 C.F.R. § 3.1(e).

they have a well-founded fear that the NPA will persecute them upon their return to the Philippines *because of* their political opinion, rather than because of some other reason. *Elias–Zacarias,* 502 U.S. at ——, 112 S.Ct. at 816. Not only does the record fail to support this conclusion with respect to petitioners' refusal to sell their land, it shows just the opposite. Petitioners testified that the squatters wished to purchase their land in order to grow rice. Petitioners presumably refused to sell because of their land's economic value. There is no evidence that the squatters believed petitioners' refusal was based on politics.

■ Petitioners also assert that they have a well-founded fear of persecution on account of their status as absentee landowners. This claim is also belied by the record. Petitioners did not use the Philippine courts or otherwise avail themselves of Philippine legal procedures to remove the squatters from their land and have not sold their property. Petitioners were unable to identify (1) the source of the threatening phone calls they received at their home in Makati; (2) who killed their nephew and stabbed their son in Manila; and (3) the armed men who stopped petitioners' car on the highway, and thus have failed to establish that these acts were committed by or on behalf of the NPA. The land in question, moreover, is three hours from petitioners' home in Makati by car. The record does not indicate that the NPA's influence extends to Makati. The Bureau of Human Rights and Humanitarian Affairs of the United States Department of State sent an advisory opinion to the IJ (included in the Administrative Record) which states that, although the NPA remains active in the Philippines, "it is now weaker than at any time since the mid–1980's. . . . [c]urrently the NPA has little or no influence in significant portions of the Philippines." The letter further opines that petitioners could relocate internally in the Philippines if their former residence is unsafe. Petitioners themselves concede in their appellate brief that the NPA is "losing power." Appellant's Br. at 14. Petitioners have fallen far short of their burden of showing that "no reasonable factfinder could fail to find the requisite fear of persecution." *Elias–Zacarias,* 502 U.S. at ——, 112 S.Ct. at 817.

Petitioners have transformed a relatively minor land dispute in an isolated part of their country into a paranoic fear of harm anywhere in the Philippines. The real reason for petitioners' hasty departure from the Philippines is probably found on page thirty-five of the Administrative Record: the entire family of petitioner Teofilo Jusay Cuevas lives in Chicago. Unfortunately for petitioners, this is not a relevant consideration in granting asylum under section 208(a) of the Act. If it were, the United States would be overrun by aliens seeking asylum. The BIA's affirmance of the IJ's denial of the asylum application is supported by substantial evidence.

■ Petitioners' application for withholding of deportation under section 243(h) of the Act also fails. Section 243(h) requires the Attorney General to withhold deportation of an alien "if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1253(h)(1). Section 243(h) requires the alien "to show that he is more likely than not to be subject to persecution." *INS v. Cardoza–Fonseca,* 480 U.S. 421, 423, 107 S.Ct. 1207, 1209, 94 L.Ed.2d 434 (1987). The Supreme Court has also described this standard as requiring the alien to show a "clear probability of persecution." *INS v. Stevic,* 467 U.S. 407, 430, 104 S.Ct. 2489, 2501, 81 L.Ed.2d 321 (1984). An applicant for withholding of deportation under section 243(h) clearly bears a heavier burden than an applicant for asylum under section 208(a). *Khano,* 999 F.2d at 1209. Since petitioners failed to establish their eligibility for asylum under section 208(a) of the Act, the conclusion of the BIA that petitioners failed to meet their heavier burden for withholding of deportation under section 243(h) is also supported by substantial evidence. *See id.*

For the foregoing reasons, the petition for review is

DENIED.