78 F.3d 587
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Petre ZLATKOV, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-2560.
 United States Court of Appeals, Seventh Circuit.
 Submitted Jan. 24, 1996.*
Decided Feb. 23, 1996.
 
 Before COFFEY, EASTERBROOK and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Petre Zlatkov, a 33 year old Bulgarian citizen, was admitted into the United States on November 29, 1990 as a nonimmigrant visitor with authorization to remain until May 29, 1991. On January 24, 1994, the Immigration and Naturalization Service ordered Zlatkov to show cause why he should not be deported. See 8 U.S.C. § 1251(a)(1)(C)(i). Zlatkov admitted deportability but applied for asylum because he claimed a well-founded fear of persecution in Bulgaria because of his anti-Communist beliefs and his Macedonian ancestry. After a hearing, the Immigration Judge (IJ) denied his application for asylum and the Board of Immigration Appeals (BIA) affirmed. Zlatkov now petitions this court to review his application arguing that the BIA erred by summarily affirming the IJ's determination and that the BIA abused its discretion in refusing to grant asylum.
 
 I. Factual Background
 
 2
 Zlatkov testified at the Immigration Hearing to a familial history of persecution by the Bulgarian government. Zlatkov's troubles began in the seventh grade when he refused to join Komsom ol, the communist youth organization. As a result, he was given lower grades, subjected to unfair treatment, and forced to engage in hard labor at a summer camp. When a truck was reported stolen in 1978, he was detained for two days and beaten. When he was critical of the Bulgarian leader Todor Zhivkov in school, he was detained by the police department and interrogated by Captain Kotev, his father was demoted at work, and his mother's salary was lowered.
 
 
 3
 In 1980, Zlatkov began his compulsory military service in the Bulgarian army. He testified that because of his anti-communist views he was assigned to hard labor with other dissidents. When he was involved in a fight, the military police blamed Zlatkov, forced him to pay a fine, and physically assaulted him. He was honorably discharged in November 1982 and worked in a series of jobs as a welder, sales distributor, mirror producer, waiter, and construction worker. He blames his dismissal from each of these positions on government endorsed retaliations of his anti-communist views. However, he admits that he was dismissed from his job producing mirrors because the factory closed, from his job in construction because he was blamed for knocking down a wall, and from his job as a waiter because he spilled coffee on a regular customer (a ranking member of the communist party). Zlatkov also participated in anti-communist demonstrations that led to further persecution. He claims that the Bulgarian government or communist agents arrested him in 1989 for attending an illegal Union of Democratic Forces (UDF) democracy rally, denied him an international passport in 1990, interrogated and beat him after he attempted to procure a passport in Yugoslavia, made threatening phone calls to him attempting to change his political views, and assaulted him outside his church on Easter.
 
 
 4
 Zlatkov successfully obtained a visa to visit the United States in November 1990 by bribing an official in the Bulgarian government. He came to this country leaving his mother and two brothers in Bulgaria. Zlatkov testified at the Immigration Hearing that he received a letter from his brother stating that conditions in Bulgaria had changed little since Zlatkov fled, the communists retained their power, and his family was still harassed. His fiance also testified that Zlatkov had been harassed and that conditions had not changed in Bulgaria.
 
 
 5
 The IJ denied Zlatkov's application relying in part on an advisory opinion from the Department of State stating that the political conditions in Bulgaria had changed, Zlatkov's membership in the UDF did not establish a ground for persecution, and Zlatkov had no reasonable basis to believe that he would be persecuted upon his return to Bulgaria. The BIA affirmed the IJ's determination noting the political changes in Bulgaria and that much of Zlatkov's persecution sounded like a personal feud between Zlatkov and Captain Kotev. Zlatkov now appeals.
 
 II. Analysis
 
 6
 This court reviews the BIA's determination to deny an application for asylum for an abuse of discretion, Man v. INS, 69 F.3d 835, 837 (7th Cir.1995), and will affirm the BIA's decision if its findings are supportable by reasonable, substantial, and probative evidence on the administrative record as a whole. Mitev v. INS, 67 F.3d 1325, 1330 (7th Cir.1995). To warrant reversal, a petitioner must show that the evidence presented at the Immigration Hearing was so compelling that no reasonable fact finder could fail to find the requisite persecution or fear of persecution. Id. "The reviewing court is not entitled to reverse simply because it would have decided the case differently." Id. (quoting Anton v. INS, 50 F.3d 469, 472 (7th Cir.1995).
 
 
 7
 Zlatkov testified to past persecutions in retaliation for his anti-communist views. However, he presented no evidence that he was persecuted or harassed because of his Macedonian ancestry. Cf. Urukov v. INS, 55 F.3d 222 (7th Cir.1995) (petitioner sought asylum from Bulgarian persecution on account of his Macedonian ancestry). He testified only that he participated in a demonstration organized by Elendon, a Macedonian organization. However, he participated because Elendon was anti-communist and not because it was pro-Macedonian. Thus, the thrust of the BIA's opinion analyzed his claim that he was persecuted because of his political views.
 
 
 8
 In Mitev, the petitioner sought asylum because he feared persecution by Bulgarian officials because of his anti-communist views. Although Mitev did not have as long of a history of persecution as does Zlatkov, Mitev became active in the anti-communist movement after the overthrow of Todor Zhivkov in 1989 and fled Bulgaria in 1990 when the Bulgarian communists gained control of the parliament. We held that Mitev's fear of persecution was not well-founded in light of the changed political and social conditions in Bulgaria. Since 1993, "the State Department's conclusions about political rights in Bulgaria have remained generally positive." Id. at 1132. We also noted that although conditions in Bulgaria may not be idyllic, "the hard truth [is] that unpleasant and even dangerous conditions do not necessarily rise to the level of persecution." Id. at 1331.
 
 
 9
 Zlatkov claims that the BIA's decision is not supported by substantial evidence. The BIA recognized Zlatkov's past persecutions but denied relief because the political changes in Bulgaria made Zlatkov's fear of future persecution objectively unreasonable. It made this decision by weighing the articles Zlatkov presented and the report by the Department of State's Office of Asylum Affairs Bureau of Democracy, Human Rights and Labor (DRL). The DRL's report was written by experienced Foreign Service Officers with expertise in Bulgaria and incorporated information from other sources including the annual Country Reports on Human Rights Practices, and the annual World Refugee Report. The report stated:
 
 
 10
 In our view, country conditions have so altered as to remove the presumption that past mistreatment in the communist years will lead to mistreatment in the future. We would also note most plausible mistreatment is now local or personalized rather than national in origin and can be averted by recourse to internal relocation or the nascent democratic legal structures rather than to seeking political asylum abroad ...
 
 
 11
 We are unaware of any stigma or punishment for asylum applicants who return, voluntarily or otherwise. Every citizen has the right to return to Bulgaria, and former political emigrants were granted passports and have returned to visit or live tranquilly in that country.
 
 
 12
 In light of this report, the BIA concluded, "While the articles [submitted by Zlatkov] suggest a myriad of problems face the fledgling democracy, they do not indicate that the respondent or other anti-communists would face any persecution in Bulgaria." BIA op. at 5. The BIA evaluated the evidence and found the DRL report more persuasive than the articles Zlatkov submitted. Thus, the DRL report overcame the presumption that Zlatkov may face future persecution upon his return to Bulgaria. See Sivaainkaran v. INS., 972 F.2d 161, 165 n. 2 (7th Cir.1992) (evidence of past persecution creates a rebuttable presumption that the petitioner may be persecuted in the future). Further, not all of the acts of harassment need necessarily be attributed to Zlatkov's ancestry or political beliefs: he may have been a legitimate suspect in some of the crimes of which he was accused, his military arrest involved a fight, and his trip into Yugoslavia may have violated Bulgarian law. Zlatkov failed to present evidence which would compel the opposite conclusion. Thus, there is a reasonable basis to uphold the BIA's decision. See Mitev, 67 F.3d at 1333; Bevc v. INS., 47 F.3d 907, 910 (7th Cir.1995); Demirovski v. INS., 39 F.3d 177, 181 (7th Cir.1994).
 
 
 13
 Zlatkov also contends that the BIA summarily reviewed the IJ's decision. The BIA's opinion summarized and construed Zlatkov's testimony during the Immigration Hearing, reviewed other evidence submitted by Zlatkov, noted that the IJ incorrectly found that portions of Zlatkov's testimony impacted his credibility when the testimony addressed the severity of his harassment, and then analyzed Zlatkov's claim in light of applicable law and the evidence presented. Although the opinion did not detail Zlatkov's beatings and the harassments his family endured since his departure, the opinion is not the type which would generally be characterized as summary. Cf. Cuevas v. INS, 43 F.3d 1167, 1172 n. 1 (7th Cir.1995). The BIA is not required to write an exegesis on every contention, but must demonstrate only that it heard and considered the petitioner's claims. Id. at 1172. Because the BIA did not adopt the analysis of the IJ but analyzed Zlatkov's claims in six pages of discussion and analysis, the BIA did not summarily affirm the IJ's opinion.
 
 
 14
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary and the appeal is submitted on the briefs and record. See Fed.R.App.P. 34(a); Cir.R. 34(f)