124 F.3d 203
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Rajko FERENAC and Ivanka Ferenac, Petitioners,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 97-1436.
 United States Court of Appeals, Seventh Circuit.
 Argued August 5, 1997.
Decided August 27, 1997.
 
 Before Easterbrook, Manion, and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Petitioners Rajko Ferenac and Ivanka Ferenac, husband and wife, are natives of the former Yugoslavia and are Croatian citizens. They entered the United States on visitor's visas and remained after the visas expired. The Ferenacs contend that they experienced past persecution and fear future persecution based on their political beliefs; therefore, they should be granted asylum. The Immigration Judge (IJ) denied their applications for asylum and for withholding deportation, and the Board of Immigration (BIA) affirmed the decision, dismissing the Ferenacs' appeal. On appeal to this court, the Ferenacs contend that the BIA's decision was premised on an error of fact. See 8 U.S.C. § 1105a(a)(4). We affirm the decision of the BIA.
 
 I.
 
 2
 In 1991, the Ferenacs entered the United States as nonimmigrant visitors with the authorization to remain for a temporary period. Shortly thereafter, the petitioners filed an administrative application for asylum with the Chicago Immigration Office. After the temporary period ended, the Immigration and Naturalization Service (INS) issued an order to show cause charging the Ferenacs with deportability for remaining in the United States longer than permitted. After the deportation hearing, but before the IJ's ruling, the Ferenacs filed new applications for asylum. The two applications were consolidated before the Board and on appeal.
 
 
 3
 At their deportation hearing, the Ferenacs testified that they fear returning to Croatia because the members of the leading party are against them. During the relevant time period, the controlling political party in their small town, Ozalj, was the Croatian Democratic Union (HDZ). Mr. Ferenac testified that the HDZ controlled the judicial system and that the government did not protect its citizens against abuses by local police. In 1990, Mr. Ferenac became a member of another political party, the Croatian Party of Rights (HSP). Mr. Ferenac testified that the HSP was a centrist party which advocates a democratic, multi-party system.
 
 
 4
 The facts pertinent to the Ferenacs' case involve Mr. Ferenac's cafe in Ozalj, which was a local gathering place for political discussions. He had a ten-year lease on the property from the local government starting in 1985. He testified that the property could not be transferred to anyone else except back to the government. He held approximately ten HSP meetings at his cafe and supported the HSP by recruiting other members. He also contends that after he joined the HSP, he was threatened by members of the HDZ and that his house was placed under surveillance.
 
 
 5
 In 1986, when the Yugoslavian communist regime was still in power, Mrs. Ferenac was appointed to a local office in Ozalj. She testified that this job did not have a political affiliation. At first, her job entailed bookkeeping; however, she was promoted to the position of planning and financial advisor in 1991. Her direct supervisor was Stjepan Poljak, the local leader of the HDZ. At the same time she was promoted, Mrs Ferenac was elected as an independent candidate to the town parliament. In her position as financial advisor, Mrs. Ferenac questioned city officials about taxes and how they were allocated. She testified that after these inquiries she was left out of meetings and cut off from information. In spring 1991, Mrs. Ferenac quit her job. She testified that she believed she was forced to quit because her husband was a member of the HSP. Mrs. Ferenac was not a member of the HSP.
 
 
 6
 In August 1991, the Ferenacs and their two children left Croatia and entered the United States under a temporary visitor's visa. Prior to leaving Croatia, Mr. Ferenac arranged with his father-in-law to keep his cafe open. Three days after the petitioners left Croatia, Mr. Ferenac's father-in-law reported that the police had asked questions about them. Two years after the Ferenacs came to the United States, Mr. Ferenac's father-in-law wrote that an agent from the Croatian Republic and a police officer confiscated the Ferenacs' car. However, Mr. Ferenac's father-in-law did not know why the car was seized. Later that year, the local government took back Mr. Ferenac's property lease. Mr. Ferenac testified that he had never violated any laws in Croatia to cause the loss of his property, nor did he owe money or taxes on the property he leased. He also testified that he and his wife had never been arrested, detained, or physically harmed in Croatia.
 
 
 7
 The IJ denied the petitioners' applications for asylum. The BIA dismissed the Ferenacs' appeal of the IJ's decision, concluding that they had not established eligibility for asylum. The Board determined that the Ferenacs had suffered substantial loss, but it was unclear if the loss was due to Mr. Ferenac's political opinions. The BIA noted that Mr. Ferenac had admitted that he could not transfer his lease to anyone except back to the government. The Board determined that the circumstantial evidence suggested it was likely that the local authorities decided that Mr. Ferenac had violated his lease. The Board also concluded that the Ferenacs did not explain why the car's seizure was an unlawful act by the Croatian government. As to Mrs. Ferenac's application for asylum, the Board determined that she voluntarily quit her job. The Board also stated that Mrs. Ferenac's work situation exhibited a routine change due to political patronage. Finally, the Board determined that the Ferenacs had not established that the loss of the cafe and car were based on Mr. Ferenac's political beliefs.
 
 
 8
 Asking this court to reverse the Board's decision and grant asylum, the Ferenacs contend that the dismissal of their appeal was based on the Board's mistaken impression that Mr. Ferenac's lease could not be transferred. In order for the Ferenacs to obtain asylum, two steps are required. We first determine whether the Ferenacs qualify as "refugees" under 8 U.S.C. § 101(a)(42). Krastev v. INS, 101 F.3d 1213, 1216 (7th Cir.1996). The definition of "refugee" requires that the Ferenacs be unwilling or unable to return to Croatia "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Borca v. INS, 77 F.3d 210, 214 (7th Cir.1996) (citing 8 U.S.C. § 1104(a)(42)(A)). Because the Ferenacs base their claim on economic persecution, they must show that they face a "probability of deliberate imposition of substantial economic disadvantage" due to their political opinions. Borca, 77 F.3d at 216. Second, even if the Ferenacs demonstrate that they are eligible for asylum, the Attorney General still has the discretion to deny or grant the asylum applications. Mitev v. INS, 67 F.3d 1325, 1329 (7th Cir.1995).
 
 
 9
 Reviewing the BIA's decision deferentially, we conclude that the Board's determination that the Ferenacs failed to establish past persecution was based on substantial and reasonable evidence. See Dobrican v. INS, 77 F.3d 164, 167 (7th Cir.1996). The Board concluded that when Mr. Ferenac turned his cafe over to his father-in-law he violated the lease's non-transfer clause, and thus the government had authority to take back the property. Also, the Ferenacs failed in their burden of proof as to their refugee status due in part to their failure to supplement the record with the written lease. See Khatto v. INS, 999 F.2d 1203, 1208 (7th Cir.1993). As such, the Board's inference that there was an actual "clause" in the lease prohibiting transfer based on Mr. Ferenac's testimony that he was the sole lessee and could not transfer the lease, was supported by substantial and reasonable evidence.
 
 
 10
 The Board's determination that Mr. Ferenac did not establish that the seizure of his car was precipitated by his political opinion is also supported by substantial and reasonable evidence. The record contains the "Certificate of Temporary Withholding of Items" that was issued at the time the car was seized. There was also evidence that Mr. Ferenac's father-in-law did not know why the car was seized, supporting the proposition that the seizure may not have been politically motivated. More important, Mr. Ferenac did not establish evidence that these losses were motivated by his political opinions. Furthermore, there is no indication in the record that Mrs. Ferenac's resignation from her job was based on her husband's political beliefs. The Board noted that she voluntarily quit her job, viewing the incident as a political patronage change. In both Mr. and Mrs. Ferenacs' claims there is no indication that the economic harm they experienced was a deliberate form of punishment. Borca, 77 F.3d at 216. As such, the Ferenacs have failed to establish past persecution.
 
 
 11
 Second, the Board's determination that the Ferenacs did not establish a well-founded fear of persecution is also supported by reasonable and substantial evidence. The political party to which Mr. Ferenac is a member is a recognized party which participates in Croatia's elections. Mr. Ferenac's involvement in the HSP was somewhat limited; while in Croatia he was a member for approximately one year and had about ten meetings at his cafe. Mrs. Ferenac admitted that she was not in the HSP and that her job was a nonpolitical appointment. She was also elected as an independent candidate to the city parliament. Neither Mr. nor Mrs. Ferenac produced evidence that would suggest they would be subjected to punishment or infliction of harm when they return to Croatia Thus, the petitioners failed to demonstrate the probability of a deliberate imposition of a substantial economic disadvantage due to Mr. Ferenac's political beliefs.
 
 
 12
 Third, the Ferenacs cite to case law regarding their request for withholding of deportation, but do not argue that the Board's denial was erroneous. As this court has previously determined, the standard for withholding of deportation--clear probability of persecution--is more demanding than the well-founded fear of persecution standard. Mitev, 67 F.3d at 1333. Because the Ferenacs failed to establish their fear of persecution, their request for withholding of deportation also fails. Id.
 
 
 13
 AFFIRMED.