202 F.3d 922 (7th Cir. 2000)
 PAIROJ NIKRODHANONDHA, Petitioner,
v.
JANET RENO, as Attorney General of the United States; DORIS MEISSNER, Commissioner of the Immigration and Naturalization Service; the IMMIGRATION AND NATURALIZATION SERVICE; and BRIAN R. PERRYMAN, Respondents.
 No. 99-1450
 In the United States Court of Appeals For the Seventh Circuit
 Argued September 30, 1999
Decided February 3, 2000
 
 Petition for Review of an Order of the Board of Immigration Appeals No. Adg-lnh-phc Before HARLINGTON WOOD, JR., COFFEY and EVANS, Circuit Judges.
 COFFEY, Circuit Judge.
 
 
 1
 The petitioner, Pairoj Nikrodhanondha, a native and citizen of Thailand, entered the United States on a conditional resident status based on his marriage to Darlene Sincere, a United States citizen.[1] In order to remove the conditional basis of his immigration status, Nikrodhanondha and Darlene filed a "Joint Petition to Remove the Conditional Basis of an Alien's Permanent Resident Status" on June 28, 1989. An Immigration Examiner conducted a joint interview with Nikrodhanondha and Darlene, and discovered a number of inconsistencies in the couple's testimony and joint petition, including the events leading up to their marriage and their short period of cohabitation. Thereafter, the INS denied the joint petition and terminated the petitioner's conditional resident status, concluding that a "bona-fide martial relationship" did not exist. An Immigration Judge ("IJ") agreed with the Immigration Examiner's conclusions and denied the joint petition, and the Board of Immigration Appeals ("BIA") dismissed the petitioner's appeal. We agree with the BIA and deny the petition for review.
 
 I. BACKGROUND
 
 2
 At the deportation hearing, conducted on August 5, 1991 and November 1, 1991, the petitioner, his wife, Darlene, and the Immigration Examiner, Janet Schoonmaker, testified before the IJ.
 
 Janet Schoonmaker's Testimony
 
 3
 Ms. Schoonmaker testified that, during the August 1989 interview with the couple, there were a number of inconsistencies in the respective parties' versions of the events surrounding their marriage. For example, the couple initially informed the INS that they both lived together at 136 West 157th Street in Harvey, Illinois. However, as the interview progressed and the Immigration Examiner began to question the couple's veracity (Nikrodhanondha's driver's license contained a different address), they changed their stories and admitted that they, in fact, lived in separate residences; the couple admitted that they had only lived together for the initial three months of their marriage, but gave no reason for their separation. Ms. Schoonmaker also testified that the couple had no joint assets, liabilities, or income.
 
 
 4
 Based on the information gathered at the interview, including the discrepancies in the petitioner's joint application and testimony, the couple's short period of cohabitation, and the fact that the evidence indicated that the couple, even while living together, carried on "totally separate lives," Ms. Schoonmaker concluded that "at the inception [of the marriage] the respondent and his spouse did not intend to enter into a bona fide marriage. Accordingly, the [INS] has met its burden of proof and established by a preponderance of the evidence that the respondent and his spouse entered into a marriage of convenience."
 
 Petitioner's Testimony
 
 5
 The petitioner testified that he met Darlene in June 1979 and began living with her sometime in 1981. He further stated that they lived together for eight to nine months until Darlene asked him to leave because of financial problems and his drinking problem. After the petitioner left and moved in with his sister, Darlene gave birth to their daughter Nataya and, according to the petitioner, he continued to visit Darlene and Nataya as well as provide financial support to the entire family.
 
 
 6
 In January 1983, the petitioner returned to Thailand because, according to him, he was "sick in the head" and had been laid off from his job, but continued to communicate with Darlene. In August 1986, Darlene journeyed to Thailand and the couple entered into a marriage. Thereafter, Darlene immediately returned to the United States and proceeded to arrange for the petitioner's return to the United States as the spouse of a United States citizen.
 
 
 7
 On June 18, 1987, the petitioner arrived in the United States and moved in with Darlene. A few short months later, Darlene asked the petitioner to leave because he had sexually molested their five-year-old daughter, Nataya.[2] Although no formal charges were brought against the petitioner, the Department of Children and Family Services, based on the molestation, told Darlene that the petitioner should not live with them and in October 1987, the petitioner moved out.[3] Two years later, in December 1989, Darlene moved to Indiana but Nikrodhanondha remained in Illinois.
 
 Darlene's Testimony
 
 8
 Darlene gave a much different picture of the couple's courtship. She stated that she met the petitioner in 1981, not 1979 as the petitioner testified. Also contrary to the petitioner's testimony, she denied that financial problems played any part in the couple's initial separation in 1982. Darlene also testified that prior to her pregnancy with Nataya, the petitioner had proposed marriage but she refused.
 
 
 9
 Darlene also contradicted the petitioner's account of her trip to Thailand. Contrary to the petitioner's testimony that Darlene spent three weeks in Thailand, one at a hotel and two with him, Darlene testified that she spent "two weeks exactly" in Thailand and spent the entire time with the petitioner. Darlene, however, did testify that she planned to live with the petitioner once he could be trusted around children, that she uses the petitioner's last name, carries him on her insurance policy, travels with him on business trips, and that the petitioner still visits with her and the children.
 
 The Immigration Judge's Decision
 
 10
 The IJ concluded, based on the inconsistencies and misrepresentations in the petitioner's application and testimony, that the "bulk of the evidence indicates that at the inception [of the marriage,] the [petitioner] and his spouse did not intend to enter into a bona fide marriage." Consequently, the IJ denied the joint petition to remove Nikrodhanondha's conditional resident status and found him to be deportable. In so doing, the IJ relied on: 1) the couple's short period of courtship; 2) the couple's conflicting accounts concerning the times and living arrangements during their wedding ceremony; 3) the couple's short period of cohabitation; 4) the misrepresentations concerning their correct addresses; and 5) the lack of any evidence indicating that the couple shared assets or liabilities. On January 29, 1999, the BIA adopted the IJ's decision and dismissed the petitioner's appeal. Nikrodhanondha filed the present petition for review.
 
 II. ANALYSIS
 
 11
 On appeal, Nikrodhanondha argues that: 1) the IJ's determination that there was no intent to enter into a bona fide marriage was improper; and 2) the BIA's review of the IJ decision was inadequate as a matter of law. We review Nikrodhanondha's first claim, that the IJ incorrectly denied his joint petition, under the substantial evidence test. See Sanon v. INS, 52 F.3d 648, 651 (7th Cir. 1995). The denial of the joint petition will be upheld if it is "supported by reasonable, substantial, and probative evidence on the record as a whole." See Angoucheva v. INS, 106 F.3d 781, 788 (7th Cir. 1997) (internal quotations and citations omitted). Under this deferential standard, the IJ's finding can only be reversed if the evidence compels an opposite result. See INS v. Elias-Zacharias, 502 U.S. 478, 481 n.1 (1992).
 
 
 12
 Upon review, we hold that the IJ's decision to deny the joint petition for review is supported by substantial evidence. Initially, there are many inconsistencies between Nikrodhanondha's and Darlene's version of events surrounding their courtship and marriage. For example, they both gave different years for when they first met, different reasons for their initial break up, and different periods of time that Darlene was in Thailand for the wedding. Furthermore, both Darlene and Nikrodhanondha gave false information concerning their correct addresses and the amount of time they actually lived together. Finally, there was no evidence indicating that the couple shares any assets or liabilities. Under the circumstances, we refuse to hold that substantial evidence does not support the IJ's decision to deny the joint petition.
 
 
 13
 Nikrodhanondha also alleges that the BIA's review of his case was insufficient; we disagree. "All our decisions require . . . is that the BIA's decision reflected that it has heard and thought and not merely reacted. . . . [Furthermore, t]he BIA has no duty to write an exegesis on every contention. . . . Although we have urged the BIA to explain its decisions in greater detail so that we may be confident it has given an appeal due consideration, we have held that the BIA adequately explains its decision when it adopts a decision of the IJ." Cuevas v. INS, 43 F.3d 1167, 1170 (7th Cir. 1995) (internal quotations and citations omitted). Furthermore, the BIA specifically stated that it was affirming the decision of the IJ after it had "review[ed] the record" and concluded that the "Immigration Judge adequately considered all the evidence presented." We are convinced that the BIA's explanation is sufficient to satisfy due process. See Dobrican v. INS, 77 F.3d 164, 167 (7th Cir. 1996); Guentchev v. INS, 77 F.3d 1036, 1038 (7th Cir. 1996).
 
 
 14
 Because substantial evidence supports the IJ's decision that there was no intent to enter into a bona fide marriage and the BIA adequately reviewed the IJ's decision, the petition for review is
 
 
 15
 DENIED.
 
 
 
 Notes:
 
 
 [1]
 Sincere is Darlene's maiden name; she currently holds herself out to be Darlene Nikrodhanondha.
 
 
 [2]
 Darlene reported the incident to the police, who took custody of the petitioner and tested, both medically and psychologically, Nataya for child abuse. After these tests failed to reveal any proof of abuse, the petitioner was released and was not formally charged.
 
 
 [3]
 In 1988, soon after Nikrodhanondha left the house, Darlene gave birth to the couple's second child, David. Tragically, David died as the result of complications at birth.