Ilko GUENTCHEV, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 95–2309.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 24, 1996.

Decided March 4, 1996.

Royal F. Berg (argued), Chicago, IL, for Petitioner.

Janet Reno, Office of the United States Attorney General, Washington, DC, Samuel Der–Yeghiayan, Immigration & Naturalization Service, Chicago, IL, James B. Burns, Office of the United States Attorney, Chicago, IL, William J. Howard, David M. McConnell, Marion E. Guyton, Department of Justice, Civil Division, Immigration Litigation, Washington, DC, and Ernesto H. Molina, Jr. (argued), United States Department of Justice, Washington, DC, for Respondent.

Before COFFEY, EASTERBROOK, and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Ilko Guentchev wanted to be a policeman in his native Bulgaria. He was turned down—because, he says, he practiced the Eastern Orthodox faith, and because some ancestors had been police before the communists came to power in 1944, for which he was unwilling to atone by joining the Communist Party. So he took other, less satisfying, employment. In 1990 Guentchev arrived in the United States as a tourist and did not leave when his visa expired. Instead of approaching the INS to claim asylum as a refugee, he kept his head low. After the INS caught up with him, Guentchev argued that his religion and family history had been bases of persecution, supporting his demand for asylum under 8 U.S.C. § 1158(a) and withholding of deportation under 8 U.S.C. § 1253(h).

The immigration judge was not impressed by the idea that inability to work in Bulgaria as a policeman is a form of persecution allowing one to live permanently in the United States—especially not when the government of Todor Zhivkov fell in November 1989 and has been replaced by a democratic one. Guentchev observes that today's Bulgarian government includes persons who played roles in the repressive pre–1990 regime. Still, the State Department believes that Bulgaria has ceased to persecute people on grounds of religion and politics. The Immigration Judge held that Guentchev had not established either past persecution (he had a good job despite his disappointment at his inability to join the police, and his wife was employed as an accountant) or a probability of future persecution. Substantial evidence supports both aspects of this decision. See *INS v. Elias–Zacarias*, 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992); *INS v. Cardoza–Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); *INS v. Stevic*, 467 U.S. 407, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984). If, as Guentchev contends, he is wanted by the Bulgarian military for additional service, this is a burden of civic life that cannot be traced to his religious or political beliefs—or so the immigration judge rationally could (and did) conclude.

■ What the immigration judge found is not necessarily dispositive, however. The Board of Immigration Appeals usually exercises the statutory power reposed in the Attorney General. Guentchev appealed to the Board, which sent him packing on a two-paragraph order that, beyond formal matters (and a grant of voluntary departure), says only: "As we find that the immigration judge adequately and correctly addressed the issues raised on appeal, his decision is affirmed based upon and for the reasons set forth in that decision." Guentchev argues at length that this summary affirmance violates the due process clause of the fifth amendment.

■ The Constitution does not entitle aliens to administrative appeals. Even litigants in the federal courts are not constitutionally entitled to multiple layers of review. The Attorney General could dispense with the Board and delegate her powers to the immigration judges, or could give the Board discretion to choose which cases to review (a la the Appeals Council of the Social Secu-

rity Administration, or the Supreme Court exercising its certiorari power). The combination of a reasoned decision by an administrative law judge plus review in a United States Court of Appeals satisfies constitutional requirements. See also *Taylor v. McKeithen*, 407 U.S. 191, 194 n. 4, 92 S.Ct. 1980, 1982 n. 4, 32 L.Ed.2d 648 (1972). But the constitutional label is a distraction. Guentchev invokes the principle that agencies must consider claims made to them and give rational explanations for their decisions. E.g., *Salameda v. INS*, 70 F.3d 447 (7th Cir.1995); *Kaczmarczyk v. INS*, 933 F.2d 588, 595 (7th Cir.1991). The agency must "announce its decision in terms sufficient to enable a reviewing court to perceive it has heard and thought and not merely reacted." *Vergara–Molina, v. INS*, 956 F.2d 682, 685 (7th Cir.1992), quoting from *Becerra–Jimenez v. INS*, 829 F.2d 996, 1000 (10th Cir. 1987). This is a norm of administrative law, which Guentchev insists a summary affirmance violates.

■ The premise of Guentchev's argument is that, by affirming on the opinion of the immigration judge, the Board has concealed from the reviewing court what the Board thinks of the case—if, indeed, the Board has thought about the case. Perhaps some summary dispositions obscure the Board's reasons, or hide the lack of reasons. What the Board's order says, however, is that the Board agrees with the immigration judge's reasons, and we have no greater reason to doubt that statement than we have to doubt that the explanation in an elaborate opinion is an honest recapitulation of the reasons for decision. To adopt someone else's reasoned explanation *is* to give reasons. The risk that adoption hides intellectual laziness, or intellectual dishonesty, is no greater than the risk that a judicial opinion drafted by a law clerk befogs the judge's thoughts. District judges regularly adopt the reports of magistrates; some appellate courts adopt the work of commissioners. Writing imposes mental discipline, but we lack any principled ground to declare that members of the Board must use words different from those the immigration judge selected. It is therefore no surprise that this court has repeatedly held that the Board fulfils its duty by summarily affirming an immigration judge's opinion. *Urukov v.*

*INS*, 55 F.3d 222, 227–28 (7th Cir.1995); *Cuevas v. INS*, 43 F.3d 1167, 1170 (7th Cir. 1995); *Castaneda–Suarez v. INS*, 993 F.2d 142, 146 (7th Cir.1993). Guentchev tells us that *Cuevas* is different because the Board mentioned the issues that the immigration judge had decided, but so what? The point is that an appellate tribunal is entitled to adopt the opinion of its predecessor; the form of words it chooses to do so is irrelevant. Following summary affirmance, we take the immigration judge's explanation as the Board's. *Dobrican v. INS*, 77 F.3d 164, 167 (7th Cir.1996). Cf. *Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

■ Substantial evidence supporting the immigration judge's decision therefore is dispositive against Guentchev. He protests that developments in Bulgaria after the immigration judge's decision of 1993 call its analysis into question. But he did not make this argument to the Board, even though the Board could have received additional submissions after the 1994 Bulgarian elections, so it is foreclosed here. *Milosevic v. INS*, 18 F.3d 366, 373 (7th Cir.1994). Whether the subject would be open on a petition for reconsideration given this forfeiture—or whether such a petition could be anything more than a delaying tactic, given the State Department's continuing favorable assessment of political conditions in Bulgaria, on which see *Mitev v. INS*, 67 F.3d 1325, 1332 (7th Cir.1995)—are questions beyond our authority at this juncture.

■ Actually, Guentchev is fortunate to have received even this review, for his lawyer violated Fed.R.App.P. 30(a) and Circuit Rule 30(b)(3) by omitting the immigration judge's opinion from the appendix to his brief. Appellate Rule 30(a)(2) provides that the appendix must include "any relevant portions of the pleadings, charge, findings or opinion"; an immigration judge's opinion fits this description in every case, and the Board's order adopting its reasoning made its relevance pellucid. But Appellate Rule 30(a) is often misunderstood, so Circuit Rule 30 adds detail. Circuit Rule 30(b)(3) directs counsel to include "[c]opies of all opinions, orders, find-

ings of fact and conclusions of law rendered in the case by administrative agencies (including their administrative law judges)." The Board is an agency, and an immigration judge is an administrative law judge, covered by this rule.

Compliance with these rules is vital to the appellate function. How can a court of appeals review a decision it does not have? The opinion is essential to understand and evaluate the arguments in the brief; that is why it must appear in the appendix, and not just in the record, which usually is inaccessible when the judges read the briefs. To ensure that counsel are aware of their obligations, we require them to state that they have complied; a brief lacking the necessary certificate is returned. Royal F. Berg, who represents Guentchev in this court, included a statement that does not itself comply with the rules. Circuit Rule 30(c) provides: "The appendix to each appellant's brief shall contain a statement that all of the materials required by parts (a) and (b) of this rule are included. If there are no materials within the scope of parts (a) and (b) of this rule, counsel shall so certify." Berg wrote "that the decision of the Board of Immigration Appeals, which is the subject of this Petition for Review is attached". This is accurate, as far as it goes, but does not conform to Rule 30(c), and the Clerk should have returned the brief.

In ordinary civil litigation, failure to supply the court with the decision under review leads to summary affirmance. E.g., *Urso v. United States,* 72 F.3d 59, 61–62 (7th Cir.1995); *Mortell v. Mortell Co.,* 887 F.2d 1322, 1327 (7th Cir.1989); *Teitelbaum v. Curtis Publishing Co.,* 314 F.2d 94, 95 (7th Cir. 1963); *Sparrow v. Yellow Cab Co.,* 273 F.2d 1 (7th Cir.1959); *Chicago & Eastern Illinois Railroad v. Southern Ry.,* 261 F.2d 394, 400 (7th Cir.1958). In criminal cases, by contrast, courts regularly protect suspects and prisoners from the errors of their lawyers. We have deemed time in prison an excessive sanction for a non-jurisdictional procedural default, and have concluded that counsel should bear the consequences of noncompliance. E.g., *United States v. Gomez,* 24 F.3d 924, 928–30 (7th Cir.1994); *United States v.*

*Smith,* 953 F.2d 1060, 1068 (7th Cir.1992). Deportation, often grouped with criminal litigation because of the severe consequences, deserves similar treatment. We have tracked down the immigration judge's opinion and considered all of Guentchev's arguments on the merits, in order to protect him from the procedural gaffes of his lawyer. Still, the lawyer must be called to account for his own conduct, which is particularly serious in this case because the Board adopted the immigration judge's opinion. Did counsel hope that we would decide this case without appreciating the reasons his client had been deported? At oral argument counsel told us that, although he has practiced in this court for many years, he was unaware of Circuit Rule 30(b)(3) and never complies with it. That is hardly reassuring. Accordingly, as in *Gomez* and *Smith,* we will issue an order under Fed.R.App.P. 46(c) requiring counsel to show cause why he should not be reprimanded or otherwise disciplined for noncompliance with Appellate Rule 30(a) and Circuit Rules 30(b) and (c).

The order of the Board of Immigration Appeals is affirmed.