90 F.3d 220
 35 Fed.R.Serv.3d 946, 45 Fed. R. Evid. Serv. 191
 Mary HILL, Widow and personal representative for the Estate
of Robert J. Hill, Deceased, Plaintiff-Appellant,
v.
PORTER MEMORIAL HOSPITAL, John L. Swarner, M.D., Antonio D.
Zelaya, M.D., et al., Defendants-Appellees.
 No. 95-2716.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 2, 1996.
Decided July 19, 1996.
 
 Priscilla A. Herochik, Merrillville, IN, Timothy O. Malloy (argued), James E. Schreiner, George C. Patrick, Schreiner & Malloy, Schererville, IN, for Plaintiff-Appellant.
 Kathleen M. Maicher (argued), John P. McQuillan, Robert D. Brown, Spangler, Jennings & Dougherty, Merrillville, IN, for Porter Memorial Hospital, Hartley M. Thomas and Porter Emergency Physicians Associates, P.C.
 David C. Jensen (argued), Alyssa Forman Stamatakos, Eichhorn & Eichhorn, Hammond, IN, for John L. Swarner and Tim Whetsel.
 F. Amin Istrabadi, Michael S. Baechle (argued), Baechle & Istrabadi, Merrillville, IN, for Antonio D. Zelaya.
 Before POSNER, Chief Judge, and RIPPLE and MANION, Circuit Judges.
 MANION, Circuit Judge.
 
 
 1
 While at work Robert Hill fell from a loading dock onto railroad tracks crushing his face and jaw. He was rushed to a hospital where one day later he suffered respiratory arrest. Further complications, including lack of oxygen to Hill's brain during the respiratory arrest, produced a coma and he eventually died. Hill's widow sued claiming medical malpractice. The defendants asserted Hill's respiratory arrest and death were due to preexisting blocked arteries. A jury found for the defense, and Mrs. Hill appeals, claiming error on a number of evidentiary and other rulings. We affirm the district court's decision on the merits and sanction Mrs. Hill's counsel for failing to include the district court's orders in the appendix as required under Rule 30.
 
 I.
 
 2
 While at work at Bethlehem Steel in northwest Indiana in May 1990, Robert Hill fell eight feet from a loading dock onto railroad tracks. An ambulance transported him to the emergency room at Porter Memorial Hospital. Hill had suffered a serious head injury and fractured nearly every bone in his face. He was in much pain. At times he exhibited agitated, confused, and restless behavior; at others he cooperated with directions from medical personnel. This behavior was consonant with a low level of oxygen in the blood. Hospital personnel gave Hill a sedative and a pain killer. He exhibited no respiratory problems and his blood gases, including oxygen, eventually climbed within acceptable ranges. A CT scan of his head was normal.
 
 
 3
 The next night Hill went into respiratory arrest. Oxygen was forced into his lungs and doctors made several unsuccessful attempts to place a breathing tube down his throat. After 19 minutes the doctors finally intubated Hill, and his heartbeat, pulse, and blood pressure were restored. Nevertheless, as a result of the respiratory arrest Hill had suffered brain damage, leaving him comatose.
 
 
 4
 A test administered after the respiratory arrest showed blockage in the blood flow to Hill's brain. Of the two arteries that should nourish his brain stem, one was completely blocked and the other was over 90% narrowed. One doctor described Hill's diseased arteries as "generally inconsistent with life." Of the six other patients in whom that doctor had observed such a condition, five died as a result. The doctor said that the process which blocked these arteries predated by years or decades the respiratory arrest in the hospital.
 
 
 5
 After eleven weeks Hill was discharged from the hospital. He remained in a coma until he died in January 1991, eight months after the accident. Hill's wife, personal representative for his estate and a registered nurse, blamed her husband's suffering and death on the hospital, his treating physicians, hospital personnel, and a related clinic. As required by Indiana law, Mrs. Hill presented her medical malpractice claim to a medical review panel which unanimously found that the defendants met the applicable standard of care in treating Hill. She then pursued her claim in federal court alleging medical malpractice in the treatment and care of her husband. By consent of the parties and pursuant to Fed.R.Civ.P. 73 and 28 U.S.C. § 636(c), the case was referred to a magistrate judge who conducted an eleven-day trial. One of Mrs. Hill's expert witnesses opined that Hill's respiratory arrest resulted not from brain stem stroke, but from hypoxia, or lack of tissue oxygenation. Mrs. Hill claimed that medications prescribed for her husband suppressed his respiratory drive, leading to oxygen deprivation, cessation of breathing, a coma, and eventually death. Mrs. Hill also claimed that the defendants failed to monitor her husband and to recognize his condition and that the resuscitation effort during and after the respiratory arrest was substandard. A jury rendered a general verdict for the defendants.[1]
 
 II.
 
 6
 On appeal Mrs. Hill raises a myriad of arguments.[2] Only two require extended discussion. First, at oral argument Mrs. Hill's counsel was asked to discuss the most grievous error in the district court. He claimed it was a violation of the district court's pre-trial separation of witnesses order pursuant to Fed.R.Evid. 615. Specifically, Mrs. Hill asserts that doctors testifying as defense expert witnesses "tailored" their trial testimony after reviewing a transcript of the trial testimony of one of her expert witnesses. Second, Mrs. Hill challenges the magistrate judge's decision to strike the testimony of two of her expert witnesses because their late disclosure violated the court's scheduling order.
 
 
 7
 We review the magistrate judge's evidentiary rulings for abuse of discretion. Richardson v. Consolidated Rail Corp., 17 F.3d 213, 216 (1994). We inquire, therefore, not whether we would have ruled differently if we had tried the case, but rather whether the magistrate judge's decisions were reasonable. Antevski v. Volkswagenwerk, 4 F.3d 537, 540-41 (7th Cir.1993).
 
 A. Violation of Witness Separation Order
 
 8
 Before trial the magistrate judge issued a witness separation order pursuant to Fed.R.Evid. 615, which provides that the court shall order witnesses excluded from trial so they cannot hear the testimony of other witnesses. During trial, part of the testimony of Dr. Kelly (a neuroradiologist), one of Mrs. Hill's expert witnesses, was transcribed and presented for review to Drs. Rosen (an internist) and Geremia (a neuroradiologist), expert witnesses retained by the defense. Dr. Kelly testified about a study performed on Hill a week after the accident which assessed the blood supply to certain portions of Hill's brain. Dr. Kelly had never been deposed, and testified during Mrs. Hill's case-in-chief that his findings of arterial blockage were "incompatible with life." Drs. Rosen and Geremia testified that Hill stopped breathing because of a lack of adequate blood supply to the brain stem and that the disease process which produced the blockages had been ongoing for quite a while.
 
 
 9
 Although a witness called by the plaintiff, Dr. Kelly's trial testimony cut against Mrs. Hill's trial theory that pre-existing arterial blockages had no relationship to Hill's respiratory arrest. Upon realizing that before testifying Drs. Rosen and Geremia had read the trial transcript of Dr. Kelly's testimony, Mrs. Hill's counsel moved that their testimony be stricken, arguing that Drs. Rosen and Geremia "tailored" their expert opinions based on Dr. Kelly's testimony. In the alternative, Mrs. Hill's counsel requested that the jury be instructed concerning the credibility of an expert witness who had reviewed another witness' trial testimony.
 
 
 10
 The magistrate judge refused to strike the doctors' testimony. He found no evidence that the doctors had tailored their opinions based on Dr. Kelly's testimony. As a cautionary measure the magistrate judge granted Hill's counsel's alternative request and instructed the jury on evaluating the credibility of a witness alleged to have violated the separation order. He also said that Hill's counsel could have the defense's expert testimony transcribed and given to plaintiff's expert rebuttal witnesses.
 
 
 11
 We scrutinize for abuse of discretion the district court's decision to permit the expert testimony of Drs. Rosen and Geremia notwithstanding that they had read the trial testimony of Dr. Kelly. Federal Rule of Evidence 703 expressly states that an expert can base his opinion on the facts and data learned from attending the trial and listening to testimony. This is precisely the conduct of which Mrs. Hill complains. See, e.g., United States v. Crabtree, 979 F.2d 1261, 1270 (7th Cir.1992) (claim that FBI agent seated at counsel table who testified as expert witness violated Rule 615 order; district court did not abuse its discretion by allowing agent to testify because "there is little if any difference between counsel disclosing prior testimony to an expert and having an expert listen to such testimony in the courtroom"), cert. denied, 510 U.S. 878, 114 S.Ct. 216, 126 L.Ed.2d 173 (1993).
 
 
 12
 If witnesses fashion their testimony based upon another witness' testimony, Rule 615 is violated. See United States v. Jackson, 60 F.3d 128, 133 (2d Cir.1995) ("Rule 615 codified a well-established common law tradition of sequestering witnesses 'as a means of discouraging and exposing fabrication, inaccuracy, and collusion.' ... [T]his practice ... serves two purposes: it 'exercises a restraint on witnesses "tailoring their" testimony to that of earlier witnesses; and it aids in detecting testimony that is less than candid.' ") (quoting Fed.R.Evid. 615 Advisory Committee Notes and Geders v. United States, 425 U.S. 80, 87, 96 S.Ct. 1330, 1335, 47 L.Ed.2d 592 (1976)). These doctors provided expert reports before trial pursuant to Fed.R.Civ.P. 26(a)(2)(A) and gave depositions at which their opinions were memorialized. They maintained and testified to the same opinions throughout the case. Without any evidence that their testimony changed, we cannot conclude Mrs. Hill was prejudiced because they learned of Dr. Kelly's testimony. Accordingly, it was within the district court's sound discretion to allow Drs. Rosen and Geremia to testify. See, e.g., United States v. Gammon, 961 F.2d 103, 105 (7th Cir.1992) (absent evidence of prejudice, collusion, or willful violation, district court has discretion to allow testimony of lay witness in violation of sequestration order).
 
 
 13
 Moreover, faced with this motion the magistrate judge took the extra measures of: (1) allowing each side's expert witnesses to consult the others' trial testimony; and (2) instructing the jury on expert witness credibility in response to any Rule 615 violation. The instruction advised the jury that it could consider a witness' review of trial testimony in evaluating that witness' testimony. This instruction was sufficient to correct the risk of unfairness.[3] The district court did not abuse its discretion in concluding that Rule 615 had not been violated, or otherwise err in its resolution of the situation.
 
 
 14
 B. Exclusion of Two of Mrs. Hill's Expert Witnesses
 
 
 15
 At a June 24, 1994 scheduling conference, upon agreement of the parties and pursuant to a Fed.R.Civ.P. 16 order entered by the district court, Mrs. Hill was to identify her expert witnesses and provide expert reports to the defendants by August 31, 1994. Mrs. Hill identified one of her expert witnesses, Dr. Rader, on August 25, 1994, within the required time period. But she waited until October 14, 1994, 45 days after her disclosure deadline, to identify her second expert witness, Dr. Cranberg. She did not provide Dr. Cranberg's report until November 18, 1994, 80 days after her disclosure deadline. Mrs. Hill identified Dr. Rothenberg as another of her expert witnesses on November 12, 1994, 74 days late. She did not even identify him as a testifying expert and provide his report until January 17, 1995, 139 days after her deadline. Upon the defendants' motion, the district court struck Drs. Cranberg and Rothenberg as expert witnesses because their late disclosure violated the scheduling order.
 
 
 16
 "When one party fails to comply with a court's pre-hearing order without justifiable excuse, thus frustrating the purposes of the pre-hearing order, the court is certainly within its authority to prohibit that party from introducing witnesses or evidence as a sanction." In re Maurice, 21 F.3d 767, 773 (7th Cir.1994). The June 24, 1994 scheduling order provided simple and unequivocal deadlines. The defendants needed to conduct sufficient discovery of plaintiff's experts and their opinions to prepare for trial properly. Adherence to established deadlines is essential if all parties are to have a fair opportunity to present their positions. In the absence of a compelling excuse, a district court is well within its discretion to exclude untimely proffered evidence or testimony. Mrs. Hill's counsel has not given a persuasive explanation for the untimely disclosure of Drs. Cranberg and Rothenberg.
 
 
 17
 Further, considering statements in their depositions, it appears that the trial testimony of Drs. Cranberg and Rothenberg would have been largely, if not totally, cumulative of Mrs. Hill's other experts. In her appellate brief, Mrs. Hill acknowledges that the opinions of Drs. Cranberg and Rothenberg concur with the testimony of two of her other expert witnesses, Drs. Rader and Schmidt. Without showing how the testimony of these doctors was going to differ from that presented by Mrs. Hill's expert witnesses who did testify, she has not demonstrated the necessary prejudice for us to reverse the magistrate judge's decision to exclude their testimony. Such a decision was within his sound discretion, to which we defer here. Mankey v. Bennett, 38 F.3d 353, 359 (7th Cir.1994) (upholding exclusion of expert witness at trial because he was not identified in the pretrial report); see also Scaggs v. Consolidated Rail Corp., 6 F.3d 1290, 1295-96 (7th Cir.1993) (same).
 
 
 18
 Mrs. Hill also claims prejudice from an alleged procedural error in the exclusion of these witnesses. She argues that because the magistrate judge did not give her a hearing on the motion to strike before issuing his ruling she was not afforded due process. But Fed.R.Civ.P. 78 expressly provides that a court may determine motions without an oral hearing. Northern District of Indiana Local Rule 7.5 grants to the district court complete discretion whether an oral argument should take place on a motion. Mrs. Hill filed a written submission on this issue which the magistrate judge considered. He did not abuse his discretion by ruling on the motion with such a record. See, e.g., Mann v. Conlin, 22 F.3d 100, 103 (6th Cir.) ("It is within the district court's discretion to expedite a case by ordering 'the submission and determination of motions without oral argument.' ") (quoting Fed.R.Civ.P. 78), cert. denied, --- U.S. ----, 115 S.Ct. 193, 130 L.Ed.2d 126 (1994).
 
 
 19
 Mrs. Hill also raised other arguments to support her claim of reversal. Apparently in response to the striking of the testimony of Drs. Cranberg and Rothenberg, Mrs. Hill moved to strike the testimony of certain defense expert witnesses. She also moved to strike other evidence offered shortly before the pretrial order was due to be filed. She further complains that her motion in limine to bar all treating physicians and staff from providing expert testimony was not granted in full, and that the court failed to properly instruct the jury on impeachment and credibility of expert witnesses and on Indiana workers' compensation law. The magistrate judge did not abuse his discretion in his resolution of these various motions. We have considered Mrs. Hill's arguments but find none of them persuasive or worthy of further discussion in this opinion. See, e.g., English v. Cowell, 10 F.3d 434, 440 (7th Cir.1993).
 
 III.
 
 20
 We turn now to an important matter of legal practice before this court. Circuit Rule 30 requires that a party's appendix contain any relevant portion of the district court's findings, opinions, or orders that the appellant refers to as part of the appeal. Ready access to essential parts of the record is absolutely necessary to accurately and expeditiously assess and resolve any case. By omitting key documents, Mrs. Hill's appendix was entirely inadequate.
 
 
 21
 In this appeal, Mrs. Hill challenges many of the magistrate judge's evidentiary rulings. Pursuant to Circuit Rule 30(c), her counsel certified that all materials required by subsections (a) and (b) of that rule were included in the appendix. This certification was false. Mrs. Hill's appendix did not include complete copies of district court orders: (1) granting defendants' motion to strike the expert testimony of Drs. Cranberg and Rothenberg; (2) denying plaintiff's motion to reconsider this order; (3) denying plaintiff's motion to strike and bar contentions, witnesses, and exhibits of defendants Zelaya, Swarner, and Whetsel; (4) denying in part plaintiff's motion to strike additional contentions, witnesses, and exhibits of defendants; (5) denying plaintiff's motion to bar expert testimony of Drs. Rosen, Fahey, and Geremia; and (6) denying plaintiff's motion to bar all treating physicians and staff from providing expert testimony. The appendix excluded key pages from some of the magistrate judge's orders (sometimes including only the first page of the order) and totally excluded other relevant rulings. Importantly, the appendix did not include the transcript pages at which the magistrate judge explained the reasoning for his rulings, as required by Circuit Rule 30(a). These are the precise orders and rulings that are the subject of Mrs. Hill's appeal.
 
 
 22
 In its response brief, the hospital pointed out these errors and called for this court to summarily affirm the district court's judgment as we did in Mortell v. Mortell Co., 887 F.2d 1322, 1327 (7th Cir.1989), where the appellant likewise filed a false certificate of compliance with Circuit Rule 30. Mrs. Hill's counsel ignored this request in their reply brief. They did so at their own peril.
 
 
 23
 On March 20, 1996, this court ordered Mrs. Hill to show cause why the district court's judgment should not be summarily affirmed as a sanction for filing a false Rule 30(c) certification. Mrs. Hill's counsel apologized and stated that they did not intend to omit the magistrate judge's various orders and rulings. They also pleaded ignorance, let slip that this was the first appeal they had initiated in this court, and attached the missing documents. When questioned at oral argument about the deficient appendix, Mrs. Hill's counsel offered no convincing explanation for the false certification under Rule 30, partial inclusion of certain documents, and total exclusion of others.
 
 
 24
 We have repeatedly stated that Circuit Rule 30 mandates parties provide us with a district court's reasoning for its decision. United States v. Gomez, 24 F.3d 924, 929-30 (7th Cir.) (failure of appellant to include trial court's opinion or transcript of oral reasons in appendix warranted order to show cause why attorneys signing brief should not be subject to professional discipline for violation of Circuit Rule 30(a), citing United States v. Smith, 953 F.2d 1060, 1068 (7th Cir.1992) (order to show cause for violation of circuit rule), cert. denied, --- U.S. ----, 115 S.Ct. 280, 130 L.Ed.2d 196 (1994), and In re Mix, 901 F.2d 1431, 1433 (7th Cir.1990) (same)). The purpose of Fed. R.App. P. 30 and Circuit Rule 30 is for this court to have all necessary documents before it as it considers the parties' arguments and renders its decision. Transgression of these rules is not a "nit-picky" violation. Failure to supply necessary documents goes to the heart of this court's decision-making process. We cannot consider arguments that the lower court was incorrect and should be reversed if the written orders and transcript pages containing the appealed decisions are not before us.
 
 
 25
 This is not a new rule. "For more than 35 years, this court has declined to entertain appeals when the appellant does not file a required appendix." Urso v. United States, 72 F.3d 59, 61 (7th Cir.1995) (failure to provide district court's explanation for refusal to award attorneys' fees to taxpayer prevented appellate review of that issue, citing numerous decisions, including Gomez and Mortell). See also Morrison v. Texas Co., 289 F.2d 382, 384 (7th Cir.1961) (court has power to dismiss appeal or affirm judgment due to appellant's disregard of appendix rule by failing to delineate relevant portions of district court record from which appeal was taken); Potomac Ins. Co. v. Stanley, 281 F.2d 775, 778 (7th Cir.1960) (failure to include in appendix all parts of record and transcript necessary to present any error justifies refusal to consider same).[4] "[I]n an era of swollen appellate dockets, courts are entitled to insist on meticulous compliance with rules sensibly designed to make appellate briefs as valuable an aid to the decisional process as they can be." Avitia v. Metropolitan Club of Chicago, Inc., 49 F.3d 1219, 1224 (7th Cir.1995). Given this well-established law, ignorance of Rule 30 and its consequences is no excuse for Mrs. Hill's counsel's conduct.
 
 
 26
 We are especially struck that Mrs. Hill's counsel did not reply when opposing counsel pointed out the deficient appendix. Only an order to show cause focused their attention on this obvious problem. Counsel paying attention to the prosecution of an appeal, as they should, would never ignore a request from opposing counsel for summary affirmance. Cf. United States v. Smith, 953 F.2d at 1067-68 ("We cannot fathom why a lawyer, alerted to [Circuit Rule 30], would fail to correct the shortcoming and instead certify that he has complied in full."). At that juncture Mrs. Hill's counsel should have moved to correct the appendix rather than disregard the issue. For all of these reasons we have no trouble concluding that Mrs. Hill's counsel violated Circuit Rule 30. The question is the proper sanction for this violation.
 
 
 27
 The serious nature of Mrs. Hill's counsel's conduct makes this case a candidate for summary affirmance under Mortell. This and other courts have failed to entertain an appeal, or summarily affirmed a district court's decision, on solely this ground. See Guentchev v. I.N.S., 77 F.3d 1036, 1039 (7th Cir.1996) (collecting cases). Yet summary affirmance would be no real sanction in this case because we affirm the judgment on the merits. Further, in this case at least, to summarily affirm would punish Mrs. Hill for her attorneys' misfeasance. Summary affirmance would impact the attorneys only indirectly, assuming they had a compensation arrangement contingent on winning the case.
 
 
 28
 This court recently considered this issue in Guentchev. Counsel for a resident alien petitioned for judicial review of a Board of Immigration Appeals' decision denying his claim for asylum. Id. at 1037. We explained in that case in detail how even if Circuit Rule 30(a), which requires in an appendix "any relevant portions of the ... findings or opinion," is misunderstood, subsection (b) of the rule directs counsel to include copies of any opinions or orders or findings of fact and conclusions of law rendered by the administrative law judge in the case. Id. at 1038-39. Because the appellant in Guentchev did not include the immigration judge's opinion in the appendix to his brief, we issued an order to show cause why his counsel should not be reprimanded or otherwise disciplined for noncompliance with Fed. R.App. P. 30(a) and Circuit Rules 30(b) and (c). Id. at 1039.
 
 
 29
 As Circuit Rule 30(b)(3) directed appellant's counsel in Guentchev to include the immigration law judge's opinion, so Rule 30(b)(2) mandated that Mrs. Hill's counsel include "[c]opies of any opinions or orders in the case rendered by magistrate judges or bankruptcy judges that address the issues sought to be raised." Mrs. Hill's counsel failed to do so with no satisfactory explanation. We have already ordered her counsel to show cause and found the response lacking. Because we will affirm on the merits, vitiating the teeth of summary affirmance, and because the attorneys rather than their client deserve a reprimand for this transgression, discipline of a monetary fine is better tailored to the nature of the violation. Considering counsel's unexcusable omission of necessary documents, the impact of the deficient appendix on this court's work, as well as the ostrich-like approach to the violation, pursuant to Fed. R.App. P. 46(c) we fine attorneys for plaintiff-appellant $1,000 payable to the court for violation of Fed. R.App. P. 30 and Circuit Rule 30.
 
 
 30
 For the above-mentioned reasons, the district court's judgment is affirmed and sanctions are assessed as discussed above.
 
 
 31
 AFFIRMED WITH SANCTIONS.
 
 
 
 [1]
 The district court properly had diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332, as Mrs. Hill is an Illinois citizen, the defendants are all Indiana citizens, and the amount in controversy exceeds $50,000. This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291
 
 
 [2]
 The statement of facts in Mrs. Hill's principal brief is improperly argumentative as it treats contested testimony of her witnesses as "facts." This violates both Circuit Rule 28(d)(1) and our admonition in Avitia v. Metropolitan Club of Chicago, Inc., 49 F.3d 1219, 1224 (7th Cir.1995)
 
 
 [3]
 Mrs. Hill argues that Dr. Fahey, another expert witness for the defense, also reviewed portions of Dr. Kelly's trial transcript and altered his trial testimony. There is no evidence in the record, however, that Dr. Fahey ever read Dr. Kelly's trial transcript
 
 
 [4]
 This case is factually distinguishable from GCIU Employer Retirement Fund v. Chicago Tribune, 66 F.3d 862 (7th Cir.1995), and Glass v. Dachel, 2 F.3d 733 (7th Cir.1993), which Mrs. Hill relies upon in her response to the order to show cause. In GCIU, the appellant did not include in the appendix a one-page order in which the district court entered final judgment, but did include the district court's opinion granting summary judgment. In Glass, the appellant included in the appendix the district court's opinion denying appellant summary judgment and the short order granting appellee summary judgment, but did not attach the opinion granting appellee summary judgment. In GCIU and Glass this court accepted the appellants' explanation of inadvertent omission of a few pages. In this case numerous orders and portions of the transcript were excluded, including documentation of the lower court's reasoning