# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-3378

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

JOHN LASHAY,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
Nos. 03-CR-35 & 03-CR-270—**Rudolph T. Randa**, *Chief Judge.*

———————

ARGUED JULY 6, 2005—DECIDED AUGUST 3, 2005

———————

Before COFFEY, RIPPLE, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* A jury found John LaShay guilty of conspiracy to defraud the United States, 18 U.S.C. § 371, and tampering with a witness, *id.* § 1512(b)(1). At sentencing, the district court treated the sentencing guidelines as advisory and imposed concurrent terms of 24 months on the conspiracy count and 6 months on the witness-tampering count. LaShay now argues that there was insufficient evidence to support the witness-tampering conviction, and that the district court should have submitted sentencing

issues to a jury.[1] We affirm the convictions but vacate the sentences and remand for resentencing.

Beginning in June 2002, LaShay was involved in a scheme to help Pakistani nationals obtain permanent resident status in the United States by finding United States citizens for them to marry. LaShay's employer at a local gas station, Faryad Hussain, asked him if he knew anyone who would marry an acquaintance who needed a green card, and LaShay suggested that his daughter might do so. LaShay's daughter eventually married one of Hussain's acquaintances and sponsored his application for permanent residency. LaShay afterward approached several other women about marrying Pakistani nationals, including his daughter's mother and a former co-worker. According to Hussain, LaShay was promised $400 or $500 for his role in the conspiracy, but the payments were never made.

During the investigation of this scheme, a government agent discovered that LaShay had cashed a $2000 check written out to him by Hussain. This amount matched the sum LaShay's daughter had told authorities she was offered for her marriage. Because of this, and because $2000 was a much larger amount than Hussain typically gave employees for business purposes, the agent considered this check significant and followed up on it in a July 2003 interview with James Clark, LaShay's friend and fellow gas station employee. As Clark recounted that interview at trial, he told the agent that the station did keep cash on hand to cash paychecks for customers, but that $2000 was more than the customary amount. Hussain, however, testified at

---

[1] Although counsel reported at argument that LaShay has now been released from imprisonment, his appeal is not moot because he is still serving his term of supervised release. *United States v. Trotter*, 270 F.3d 1150, 1152 (7th Cir. 2001). On remand, the district court could still alter LaShay's overall sentence. *Id.*

trial as a government witness that he indeed gave LaShay the check to use for petty cash at the gas station, and that it was not a payment for participation in marriage fraud.

According to Clark's trial testimony, LaShay mentioned the $2000 check to him several times in the three days immediately preceding his interview with the government agent. LaShay told Clark that Hussain had given him the check to provide funds for cashing checks for customers, but that he was "worried" about the check because immigration authorities had a copy of it. He asked if Clark remembered Hussain giving him the check, but, according to his testimony, Clark responded that there was no way he could have been present for the event because he and LaShay worked different shifts. Nonetheless, LaShay raised the subject daily for three days, stating that he wanted to make sure Clark remembered that the check had been for petty cash. Clark responded that he wasn't going to lie for anyone. On cross-examination, though, Clark conceded that he did not feel LaShay had been trying to threaten or intimidate him. When asked on redirect if he felt LaShay had been asking him to lie, he responded yes, although on re-cross he also contradicted that statement by agreeing that defense counsel was "correct" in saying that LaShay hadn't really been asking him to lie.

After the guilty verdicts, the district court proceeded to sentencing. It stated that, in light of *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004), it did not believe the sentencing guidelines bound its sentencing determination. Rather, the district court decided to proceed with "[t]he Guidelines used as just that, a guide." Although LaShay had filed objections to the presentence report based on upward adjustments made to his offense level for committing the offense while on pretrial release and having a leadership role in the conspiracy, the district court did not resolve them. Instead, taking into account matters of punishment, deterrence,

retribution, rehabilitation, and the safety of the public, the district court accepted the government's recommendation of 24 months' imprisonment.

The witness-tampering count alleges that LaShay "did knowingly attempt to corruptly persuade James Clark with the intent to influence his testimony" at LaShay's trial, in violation of 18 U.S.C. § 1512(b)(1). LaShay argues that there was insufficient evidence to support the jury's guilty verdict on this charge. He argues that there was no evidence that he threatened, intimidated, or harassed Clark, or in any way encouraged him to lie.

In reviewing for the sufficiency of the evidence, we consider the evidence in the light most favorable to the government and ask whether any rational jury could have found the elements of the offense beyond a reasonable doubt. *United States v. Henningsen*, 387 F.3d 585, 589 (7th Cir. 2004). We neither reweigh the evidence nor substitute our judgment of the facts for that of the factfinder. *United States v. Masten*, 170 F.3d 790, 794 (7th Cir. 1999).

In relevant part, § 1512(b)(1) subjects to imprisonment anyone who "knowingly uses intimidation, threatens, or corruptly persuades another, or attempts to do so," with the intent to "influence, delay, or prevent the testimony of any person in an official proceeding." To have convicted LaShay of this offense as alleged in the indictment, the government was required to prove that: 1) Clark was a witness or prospective witness; 2) LaShay attempted to persuade Clark to provide false testimony; and 3) LaShay acted knowingly and with the intent to influence Clark's testimony. *United States v. Arocho*, 305 F.3d 627, 639 (7th Cir. 2002), *superseded by statute on other grounds as stated in United States v. Rodriguez-Cardenas*, 362 F.3d 958 (7th Cir. 2004); *United States v. Johnson*, 903 F.2d 1084, 1087 (7th Cir. 1990).

The jury's verdict is supported by sufficient evidence. LaShay focuses on the fact that he never threatened Clark,

but a defendant need not use physical force or intimidation to be guilty of witness tampering, so long as he attempts to "corruptly persuade" a witness to testify falsely. *United States v. LaFontaine*, 210 F.3d 125, 133 (2d Cir. 2000); *United States v. Pennington*, 168 F.3d 1060, 1066 (8th Cir. 1999); *United States v. Gabriel*, 125 F.3d 89, 102 (2d Cir. 1997); *see also Arocho*, 305 F.3d at 640 (holding that conviction under § 1512(b)(1) was supported by sufficient evidence where defendants never threatened witness but repeatedly urged him to change his story and wrote false statement that witness signed). For instance, "corrupt" persuasion occurs " 'where a defendant tells a potential witness a false story as if the story were true, intending that the witness believe the story and testify to it.' " *Gabriel*, 125 F.3d at 102 (quoting *United States v. Rodolitz*, 786 F.2d 77, 82 (2d Cir. 1986)). In *Gabriel*, the defendant faxed a witness a false account of a meeting relevant to the government's investigation of whether the defendant made misrepresentations in pursuit of government contracts. *Gabriel*, 125 F.3d at 93-94. He urged the witness to "think this through" before answering any questions about his memory of that meeting. *Id.* at 94. The Second Circuit held that this was sufficient to support a conviction for witness tampering. *Id.* at 105. Here, LaShay similarly placed a story before Clark in the hopes that he would adopt it if interviewed.

Similarly, the Second Circuit upheld a district court's finding of witness tampering where the defendant tried to persuade a witness to give a false account that tracked the defendant's position. *LaFontaine*, 210 F.3d at 132 (affirming revocation of bail based on "practical probability" of witness tampering). The defendant had done nothing more than "remind" the witness that her mother had undergone a hernia operation, when in fact the mother had received cosmetic procedures which the defendant's clinic disguised as a hernia operation when billing the insurance company.

*Id.* at 128. This case presents a similar situation, with LaShay repeatedly urging Clark to "remember" that he saw Hussain hand over the $2000 check for petty cash, when Clark knew he had not actually seen the check change hands. A jury could properly view LaShay's remarks as an unstated invitation to lie. *Id.* This is true even though the evidence at trial never established that LaShay's account of the check was false; LaShay was suggesting that Clark claim personal knowledge of the transaction when in fact he had none. *See id.* at 132-33 (practical probability of witness tampering even though defendant had some evidence to suggest that the version of events she proposed to witness could be true).

In his opening brief, which he filed before *United States v. Booker*, 125 S. Ct. 738 (2005), LaShay argues that the district court's use of the sentencing guidelines as a reference violated the Sixth Amendment. He contends that the court should have submitted the question whether he was an organizer or manager in the conspiracy to a sentencing jury. But this position is no longer tenable; *Booker* holds that application of the sentencing guidelines does not violate the Sixth Amendment so long as the district court treats them as advisory rather than mandatory. 125 S. Ct. at 750. The district court here made clear that it did not consider itself bound by the guidelines, but still found them to be a useful reference. Under those circumstances, LaShay had "no right to a jury determination of the facts that the judge deems relevant." *Id.*

In his reply brief, however, LaShay for the first time argues that the district court erred when it failed to resolve the dispute over the applicable guideline range before sentencing him. Typically, arguments first raised in a reply brief are considered waived. *Kelso v. Bayer Corp.*, 398 F.3d 640, 643 (7th Cir. 2005). But LaShay's argument here is based on *Booker*, which was not decided until after his opening brief had already been filed, meaning he raised the

argument as soon as it was reasonably available to him. Accordingly, we will review the district court's sentence for harmless error, since LaShay raised a *Blakely* objection in the district court. *United States v. Schlifer*, 403 F.3d 849, 854 (7th Cir. 2005).

LaShay is correct that, though the guidelines are no longer mandatory, district courts still must consult them and take them into account when sentencing. *United States v. Baretz*, 411 F.3d 867 (7th Cir. 2005). The district court should have calculated the guideline range accurately and then explained any deviation it chose to make in LaShay's case. *United States v. George*, 403 F.3d 470, 473 (7th Cir. 2005). Here, the district court did not bother to calculate a range at all, but simply accepted the government's sentencing recommendation. This was error. *Id.*

Nor can this error can be considered harmless. Although the government conceded at sentencing that LaShay had not committed the offense while on pretrial release, leaving only his purported leadership role in the conspiracy in dispute, this dispute might seriously have impacted LaShay's term of imprisonment. The government contended that the applicable guideline range was 21 to 27 months, but without this three-level increase in the offense level, LaShay's range would have been 12 to 18 months. LaShay's counsel argued for 14 months at sentencing. Under these circumstances, the government cannot demonstrate that the district court's failure to calculate the guideline range did not impact LaShay's sentence.

Accordingly, although we AFFIRM LaShay's convictions, we REMAND this case to the district court for resentencing.

**A true Copy:**

      **Teste:**

                _____

                *Clerk of the United States Court of*
                  *Appeals for the Seventh Circuit*