In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-1769

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROBERT WHITE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 05 CR 79—**Rudy Lozano**, *Judge.*

ARGUED SEPTEMBER 22, 2006—DECIDED DECEMBER 19, 2006

Before EASTERBROOK, *Chief Judge*, and KANNE and
SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* The defendant appeals a con-
viction for multiple counts of mail fraud, wire fraud, and
money laundering. The underlying fraud alleged in the
indictment was a failure to disclose a potential conflict of
interest while serving as an elected public servant in
Gary, Indiana. The defendant argues on appeal that the
district court erred by preventing the defense from pre-
senting its theory of the case to the jury and by committing
various sentencing errors. Because we find no error, we
affirm.

## I. HISTORY

At its heart, this case is about a corrupt politician who got caught with his hand in the cookie jar. Robert White was an elected official in Gary, Indiana, serving on the city's Common Council. In the Summer of 2003 there was a drowning in Gary at the beach where Lake Street arrives at the Lake Michigan shore. Sometime shortly thereafter, White met with Gary's Superintendent of Parks and the conversation turned to the need to construct a fence to prevent children from unauthorized access to the beach in that area. The drowning, along with the apparent ease with which children were able to walk from a nearby school to the shore, made the project a prime candidate for an emergency contract—that is, a contract that would not be subject to competitive bidding or other inconvenient scrutiny.

Fortunately for the City of Gary, White knew just the builder for the job: a small minority-owned company called Raycor. Unfortunately for the City of Gary, this was all a shell game. Unbeknownst to the city, Raycor was actually owned and operated by White's nephew. The $30,000 emergency fence contract was let to Raycor. The actual fence builder, a subcontractor from across the border in Illinois, received a mere $5,000 of the contract amount for doing all of the work. The remaining $25,000 of profit was routed through White's nephew and eventually back into White's bank account.

The government indicted White for numerous counts of wire and mail fraud as well as money laundering. The underlying conduct that the government alleged to be fraudulent was White's depriving the citizens of Gary of his honest services. Specifically, the government alleged that Indiana law required a public servant such as White to either refrain from deriving a profit from contracts with the City of Gary, or to disclose the details of the

conflict of interest. *See* Ind. Code § 35-44-1-3. The government's theory was that White owed a duty of honest services to Gary, that he defrauded Gary of his honest services, and that he used interstate wires, banks, and mail to accomplish that fraud.

White had stipulated that he did not file a conflict of interest disclosure. The defense centered around an argument that White had not owed a duty of honest services to the Park District, which was the actual government entity that let the contract. In an apparent effort to insulate the Park District from partisan politics, the department is distinct from the city in various ways. Testimony at trial included the following examples: the Park District is overseen by a bipartisan board of commissioners who are appointed by the mayor; the district is a special taxing district; in theory it has the ability to raise money either through taxes or by issuing bonds; it sets all policies for Gary parks; and it has the authority to hire and fire all Park District employees except for the supervisor of parks.

To support this theory of the defense, White sought a jury instruction that would have reprinted, verbatim, Indiana's definition of "governmental entity," which includes not only cities such as Gary but also special taxing districts, boards, bureaus, commissions, committees, departments, divisions, military units, and others. *See* Ind. Code § 35-41-1-12. The government objected to the proposed jury instruction on the grounds that the indictment only mentioned one government entity, the City of Gary, and that the indictment alleged that White had breached a duty to "the city of Gary and its citizens." In the government's view, reading the entirety of the Indiana Code might have confused the jury.

The district court declined to give the proposed jury instruction but told defense counsel that he could still

make the argument that White's role as Common Councilman was sufficiently disconnected from the actual Park District decision makers. During White's closing argument he made that argument. However, when White's counsel then attempted to read the statute (the same statute that the district court had just decided not to include as a jury instruction) the court sustained a government objection and prevented him from reciting it. White now appeals the exclusion of his proposed jury instruction and the refusal to let him read the statute to the jury.

The jury returned a verdict of guilty on all counts, and the court sentenced White to 63 months' imprisonment and restitution in the amount of $30,000. On appeal, White argues that various sentencing enhancements were either unconstitutional or improper. He argues that the district court's findings of a leadership role in the crime, obstruction of justice, and an amount of loss in excess of $10,000 were made in violation of the Sixth Amendment. He argues that a sentencing enhancement for being an elected public official was an error.

## II. ANALYSIS

### A. *The Disconnect Argument*

We review jury instructions as a whole to determine whether they fairly and adequately represent the issues to the jury. *See United States v. Alhalabi*, 443 F.3d 605, 612 (7th Cir. 2006). We review a district court's decision to not instruct the jury on a theory of defense *de novo*. *United States v. Hendricks*, 319 F.3d 993, 1005 (7th Cir. 2003). A defendant is entitled to an instruction on his theory of the defense if four conditions are met. *Id.* at 1005-06. Only two of those four conditions are relevant here: the instruction must reflect a theory that is supported by the evidence and failing to include the instruc-

tion must deny the defendant a fair trial. *Id*. at 1006. As we set out below, neither of these two prerequisites are met, and the failure to include White's proffered instruction was not an error.

Under Indiana's conflict of interest laws, it is a felony if a "public servant . . . knowingly or intentionally: (1) has a pecuniary interest in; or (2) derives a profit from; a contract or purchase connected with an action by the government entity served by the public servant." Ind. Code § 35-44-1-3. A government servant can escape this by filing a conflict of interest disclosure. Ind. Code § 35-44-1-3(c). There is no dispute between the parties that White was a public servant of the City of Gary within the meaning of the statute. Nor is there any dispute that the City of Gary is a government entity. For that matter, there is no dispute on appeal that he had a pecuniary interest in or derived a profit from the contract.

The only significant dispute is whether the contract was "connected with an action by the governmental entity served by" White. It is White's theory of the case that the Park District is a separate governmental entity from the City of Gary and that the contract in question was between Raycor and the Park District—not between Raycor and the City of Gary. To that end, he wanted the jury instructions to include the entire definition of "government entity" so that the jury would be informed that the Park District is *also* a government entity.

At the outset, we should note that we are dubious that the rote recitation of a statute can be construed as a "theory of defense" under *Hendricks*. Assuming for the moment that cutting and pasting the statute would have constituted a theory, White's argument is still wide of the mark. It is logically flawed because it presupposes that a contract can only be "connected to" one government entity—that by being connected to the Park District the

contract could not possibly have been connected to the City of Gary as a whole. There is no doubt that the fence contract in question was connected to the Park District; nor is there a dispute that White was not a public servant of the Park District. But neither of those facts is relevant to whether the contract was also connected to the City of Gary. This connection to the City of Gary was the only connection alleged in the indictment. In this sense, the jury instruction that White offered, even if it were construed as a theory, does not reflect a theory that has any evidentiary support because it is entirely non-responsive to the conduct that was alleged in the indictment.

White also fails to demonstrate how the exclusion of the instruction resulted in a denial of a fair trial. White was free to base his defense on the argument that there were numerous ways that the Park District and the Raycor contract were independent of the City of Gary. The district court did not prevent him from making any of those arguments. Unfortunately for White, the government also provided evidence that would allow a jury to find that the Raycor contract *was* connected to the City of Gary. All of that evidence was relevant to the question of whether White defrauded the City of Gary of his honest services. What would not have been relevant would have been to instruct the jury on any of a number of other government entities that were not defrauded by White.

Given the conduct alleged in the indictment and the issues that were contended between the parties, we believe that the district court did not improperly exclude the proffered jury instruction because it would not have reflected a theory that was supported by the other facts and the law and because the court granted White the latitude to make his argument to the jury orally. The instructions as a whole fairly and adequately represented the issues to the jury. Therefore, excluding White's proposed jury instruction was not a reversible error.

We turn then to the district court's decision to prevent White's counsel from reading the entire Indiana statute regarding government entities to the jury. The trial judge has the "discretion to limit argument over time consuming peripheral issues in the interests of judicial economy and reducing juror confusion." *United States v. Mahone,* 537 F.2d 922, 928 (7th Cir. 1976). Nevertheless, "exercising tight control over the argument is undesirable when it precludes counsel from raising a significant issue." *Id*. The question is whether the trial court abused its discretion in deciding to prevent the recitation of the statute to the jury.

"It is a basic premise of our legal system that juries are the triers of fact only; it is for the judge, not the jury, to interpret the law." *United States v. Tokash,* 282 F.3d 962, 968 (7th Cir. 2002). Jury instructions are the means that the court uses to inform the jury of the law that is relevant to the case. Although there are some circumstances when reading the law, either statute or case law, might be properly permitted by the court, there are few instances where a party is entitled to read law to the jury. *See generally* V. Woerner, *Counsel's Right in Criminal Prosecution to Argue Law or to Read Lawbooks to the Jury*, 67 A.L.R. 2d 245; Jacob Stein, Closing Arguments § 1:69 (2d ed. 2006). Although the selective use of statutes can be a permissible aspect of argument, particularly when a party might highlight certain parts of the instruction that the jury will shortly receive from the court in written form, a party is not entitled to read portions of the law that the trial court has already determined to be irrelevant to the facts of the case at hand. *See* Wayne R. LaFave, et al., 5 Criminal Procedure § 24.7(e) (2d ed. 1999) ("More frequently, successful challenges to prosecutorial argument have involved references (often accurate) to aspects of the law that are beyond the elements considered in the judge's charge. Indeed, those references

usually are to matters on which a judge would refuse to charge a jury if requested because they detract from its responsibility to decide the issue before it.").

Such was the case here. The district court had already decided to exclude the full extent of the Indiana statute from the written jury instructions. As we noted above, that decision was not an error. It would make little sense to exclude a statute as potentially confusing for the jury when provided in written form, but then allow that same statute to be read to the jury when the potential for confusion and misinterpretation is even greater. The court properly provided the jury with the necessary interpretation of the law as it applied to the specific charges contained in the indictment. White was not denied the opportunity to tell the jury that the Park District was also a government entity—although as we noted above that fact was logically insufficient to escape criminal liability. He was also free to make all manner of arguments that the contract was not connected to the City of Gary. But those arguments were met with other evidence from the government. Therefore, we believe that it was not an abuse of discretion to limit defense counsel from reciting the statute during closing argument.

## B. *The Sentencing Enhancements*

White also appeals his sentence. He argues that three of the sentencing enhancements are unconstitutional and that one enhancement was improper. We review arguments on the constitutionality of the sentence *de novo*. *United States v. Peters*, 462 F.3d 716, 717-18 (7th Cir. 2006). In the aftermath of *United States v. Booker*, 543 U.S. 220 (2005), we review allegations of non-constitutional sentencing errors for reasonableness. *United States v. Cooper*, 461 F.3d 850, 855 (7th Cir. 2006). If a district court considers the factors of 18 U.S.C § 3553(a) and then

imposes a sentence within the correctly calculated advisory range of the Sentencing Guidelines, the sentence is entitled to a rebuttable presumption of reasonableness on appeal. *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005).

The crimes for which White was convicted carry a statutory maximum of thirty years' imprisonment on Count 1 and twenty years' on Counts 2 through 9. White had no criminal history. The base offense level for fraud by a public official is 14. U.S.S.G. § 2C1.1. After adjusting for specific offense characteristics (plus eight), the defendant's role in the offense (plus two), and obstruction of justice (plus two), the district court concluded that White's total offense level was 26. The advisory range for a crime with an offense level of 26 and a criminal history category of I is 63 to 78 months. The court then sentenced White to 63 months' imprisonment.

White argues on appeal that this sentence is unconstitutional under the Sixth Amendment as interpreted by *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). He bases this claim on the argument that the adjustments that brought him from 14 to 26 were derived from enhancements that the district court found by a preponderance of the evidence and not found beyond a reasonable doubt by a jury.

This is a frivolous argument and it ignores the effect that *Booker* had on federal sentencing since *Blakely*. In the aftermath of *Booker*, the sentencing guidelines are construed as advisory, not mandatory. *Booker*, 543 U.S. at 259. We have repeatedly held, as the district court attempted to clarify for defense counsel at the sentencing hearing, that sentencing enhancements need not be found by a jury beyond a reasonable doubt because they

no longer alter the statutory maximum.[1] Because the sentencing factors that he challenges did not increase the sentence beyond the statutory maximum, it was not unconstitutional for the district court to apply them. Accordingly, the district court did not commit any error when it adjusted White's sentence for facts that had not been found by a jury.

White also argues that the four-level enhancement for committing the crime while being an elected public official was an error because he was not an elected official of the Park District. This argument mirrors the "disconnect" argument that we considered above, and it fails for the same reasons. The enhancement is imposed if the defendant is "an elected public official." U.S.S.G. § 2C1.1(b)(3). The defendant stipulated that he was an elected official of the City of Gary. The jury found him guilty of using the wires and mail to defraud the City of Gary. It was not an error for the district court to enhance the sentence based on the fact that he was an elected public official.

The district court correctly calculated the advisory Guidelines range and noted the effect that *Booker* had on

---

[1] In the fifteen months that elapsed between the Supreme Court's decision in *Booker* and the date that the appellant filed the brief on this appeal, this court had the occasion to consider and explicitly reject this argument no less than four times. *See, e.g., United States v. LaShay*, 417 F.3d 715 (7th Cir. 2005) (decided three months before White went to trial); *United States v. Bryant*, 420 F.3d 652 (7th Cir. 2005) (decided two months before White went to trial); *United States v. Robinson*, 435 F.3d 699 (7th Cir. 2006) (decided two months before White was sentenced); *United States v. Owens*, 441 F.3d 486 (7th Cir. 2006) (decided one month before the appellant filed his brief with this court). This is not inclusive of the number of opinions we have published that implicitly recognized this point of law or the dozens of unpublished orders during the same period that reiterated exactly this same point.

its reasoning. The applicable sentencing range was 63 to 78 months. The court sentenced the defendant within the range, and White has provided nothing on appeal to rebut the presumption of reasonableness that a sentence within the Guidelines is accorded. Accordingly, we will not vacate the sentence.

## C. *The Appellant's Brief before this Court*

Having considered the merits of the appeal, we are left with one remaining issue. Federal Rule of Appellate Procedure 30 requires that the appellant must file an appendix that contains "the relevant docket entries in the proceeding below . . . the relevant portions of the pleadings, charge, findings, or opinion . . . the judgment, order, or decision in question … [and] other parts of the record to which the parties wish to direct the court's attention." Fed. R. App. P. 30(a)(1). Our Circuit Rule 30 makes additional demands of the appellant. If the appellant challenges an oral ruling, such as sustaining the government's objection in this case, "the portion of the transcript containing the judge's rationale for that ruling must be included in the appendix." Cir. R. 30(b)(1). The appellant is also required to include a "statement that all of the materials required by parts (a) and (b) of this rule are included." Cir. R. 30(d).

The appellant in this case failed to accomplish any of the above requirements. The appendix included in the appellant's brief contained a mere five pages of Indiana statutes. There was no copy of the judgment being appealed. There was no transcript of the rationale given by the district court in the challenged oral decision. The appellant's counsel then compounded these errors by incorrectly certifying to this court that the appendix complied with the procedural requirements.

The Federal Rule and our Circuit Rule are not created for the purpose of imposing frivolous requirements on attorneys who are already busy. The purpose of these rules is to ensure that the court has "all necessary documents before it as it considers the parties' arguments and renders its decision." *Hill v. Porter Mem'l Hosp.,* 90 F.3d 220, 225-26 (7th Cir. 1996). The requirement embodied in these rules "goes to the heart of this court's decision-making process." *Id.* at 226. This is nothing new, but we have become more insistent "on meticulous compliance with rules sensibly designed to make appellate briefs as valuable an aid to the decisional process as they can be." *Id.* (citations and quotations omitted). This court's workload increases dramatically if an appeal is transformed into a scavenger hunt in search of a copy of the judgment below or the transcript page where a challenged decision was explained by the district court.

We are not without remedies in this matter. In the past we have dismissed the appeal. *See Snipes v. Ill. Dep't of Corr.*, 291 F.3d 460 (7th Cir. 2002). We have refused to consider issues that were not adequately addressed in the briefs and appendices. *See Bonds v. Coca-Cola Co.*, 806 F.2d 1324 (7th Cir. 1986). Some circuits have ordered parties to resubmit their briefs with corrections. *See Alnajjar v. Ford Motor Co.*, 523 F.2d 6 (6th Cir. 1975). And we have fined attorneys for their violations. *See Hill,* 90 F.3d at 226.

Ordering the appellant to resubmit the brief seems counterproductive in this case. With some extra work we have found the documents that were needed to reach a decision on the merits. Meaningless re-submission of documents would serve only to waste more time, albeit the appellant's counsel would be wasting time, not this court. But this seems pointless. It seems likewise pointless to dismiss the appeal or to judicially ignore those

portions of the appeal not supported by the appendix. Having reached the merits, we would prefer to avoid the appearance that the appeal was rejected over formalistic rules, when in fact the appeal fails because it has no merit. We are left then with the question of whether the court should fine the appellant's attorney for violating Rule 30.

In *Hill* we fined appellant's counsel $1000 for failing to comply with Rule 30. In accordance with the *Hill* line of cases we will impose a fine of $1000 on counsel for White unless they can show that such a fine would be inappropriate under the circumstances of the case.

### III. CONCLUSION

For the foregoing reasons, the judgment and sentence of the district court are AFFIRMED. Furthermore, in accordance with Federal Rule of Appellate Procedure 46(c) appellant's counsel of record, are ORDERED to show cause, within 21 days of the date of this opinion, why they should not jointly be sanctioned by this court in the amount of $1000 for failure to comply with Federal Rule of Appellate Procedure 30 and Circuit Rule 30.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*